197 So.2d 682 (1967)
Succession of McCullum BARLOW.
No. 2549.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1967.
Rehearing Denied May 1, 1967.
Writ Refused June 9, 1967.
Racivitch, Johnson, Wegmann & Mouledoux, Warren E. Mouledoux, New Orleans, for Glynn Barlow, plaintiff-appellee.
Dobin Friedman, New Orleans, for Isabelle Barlow Nettles, defendant-appellant.
William L. Crull, III, New Orleans, curator ad hoc for Estate of Gustavia Alexander Barlow and Estate of Noble Barlow, defendants-appellees.
Before McBRIDE, CHASEZ and BARNETTE, JJ.
BARNETTE, Judge.
This appeal involves a contest between plaintiff Glynn Barlow and defendant Isabelle Barlow Nettles, each claiming to be the child and only legal heir of the decedent, McCullum Barlow. From a judgment recognizing Glynn Barlow as the legitimate child and sole legal heir of the decedent and sending him in possession of certain property, Isabelle Barlow Nettles has appealed devolutively.
No useful purpose would be served by reciting the chronology of the several marriages, *683 divorces, births, and deaths of all the parties who have in some manner been involved in the mixed up family affairs of McCullum Barlow and his four wives. We will relate only the pertinent facts which have a direct bearing on the question presented for our decision. Simply stated, the question is: Can a child who is presumed to be the legitimate child of the mother's husband under LSA-C.C. art. 184 also be the legitimated child under LSA-C.C. art. 198 of the actual father and mother by their subsequent marriage after removal of impediments?
Prior to the year 1920, McCullum Barlow was married to Lovenia Wilson, and Rosetta Burden was married to Nathan Lestrick. Barlow and Rosetta Burden were living together openly, though each had a lawful spouse. On November 3, 1920, a child named Isabelle was born of this adulterous union. Thereafter, Lovenia Wilson died and Rosetta Burden was divorced from Nathan Lestrick. After the removal of the impediments, Barlow and Rosetta Burden were lawfully married. They continued to live together until Rosetta's death in 1934. There is no question that Isabelle was reared as their child and publicly acknowledged by them.
During this marriage, certain community property was acquired which is the subject of this litigation.
After Rosetta's death, her succession was opened. Isabelle and Edwin Lestrick (Rosetta's child by Nathan Lestrick) were recognized as her heirs and sent in possession of her interest in the community property.
McCullum Barlow next married Katie Bailey and lived with her less than three months. They separated in June, 1946, and on February 27, 1947, McCullum obtained a judgment of separation from bed and board from Katie Bailey. On May 22, 1947, a child named Glynn was born to Katie. His birth was registered naming James Martin as father and Katie Bailey as mother.
Glynn was reared as a Martin and always believed that James Martin, whom his mother married in November, 1948, after her divorce from Barlow, was his father. He had no knowledge of McCullum Barlow until 1963 when he obtained a corrected birth certificate naming McCullum Barlow his father.
No action was brought by Nathan Lestrick to disavow the paternity of Isabelle, nor was any action brought by McCullum Barlow to disavow paternity of Glynn Barlow, or Glynn Martin. The child Isabelle is, therefore, presumed to be the child of Nathan Lestrick, the husband of her mother at the time of her conception and birth. LSA-C.C. art. 184. For the same reason the child Glynn is presumed to be the child of McCullum Barlow, who was his mother's husband at the time of his conception and birth. This presumption of legitimacy is so firmly fixed in our law that it requires no further citation. It has been referred to as the strongest presumption known in our law. Feazell v. Feazell, 222 La. 113, 62 So.2d 119 (1952).
Counsel for appellant does not contend to the contrary and concedes that Isabelle is the legitimate child of Nathan Lestrick, but argues that she is also the legitimated child of McCullum Barlow under LSA-C.C. art. 198 and is entitled to all the rights of inheritance which the law accords to legitimate children. LSA-C.C. art. 199.
The 1944 amendment[1] of LSA-C.C. art. 198 continued the prohibition against adulterous annd incestuous children but made possible legitimation by subsequent marriage of all others born out of marriage acknowledged formally or informally, either before or after marriage. Prior to that amendment acknowledgement had to be by authentic act before marriage or by the marriage contract itself. In Henry v. Jean, 238 La. 314, 115 So.2d 363 (1959), the effect *684 of the 1944 amendment was applied in a situation, such as the one under consideration, where all the facts were antecedent to the amendment.
The 1948 amendment[2] of that article, by deleting the prohibition against legitimation of a child born of an adulterous union and retaining only the prohibition against those of an incestuous connection, makes possible the legitimation of adulterous bastards. Therefore, the subsequent marriage of Isabelle's father and mother and their public acknowledgment of her as their child would have legitimated her except for the fact she was not illegitimate. She was not born out of marriage. The conclusive presumption of the paternity of Nathan Lestrick precluded all other paternal possibilities, all declarations to the contrary notwithstanding. Legally Isabelle was in no different situation in the second marriage of her mother than any other step-child of a mother's new husband.
We must reject appellant's argument that a child can be both legitimate of one father and legitimated as regards another father. If the argument were valid, what of her relationship in such a situation to her mother? Would she be both legitimate and legitimated? We think this would be a conflict of status not sanctioned by LSA-C.C. art. 178, which provides: "Children are either legitimate, illegitimate, or legitimated." Note the "either or" possibilities only.
Isabelle was born legitimate. Nathan Lestrick was her presumptive father and only he could have, within the time allowed by law, changed her status to illegitimate. Having not been lowered to that status by the only person who could have done so, she cannot, by any subsequent act, be legitimated, which is a method provided by law for the raising of status designed only for the benefit of one in the lower status of illegitimacy.
Counsel for appellant concedes in his brief that he has been unable to find direct authority in our law in support of his theory, but cites Dorsey v. Williamston, 170 So.2d 773 (La.App. 1st Cir. 1964), which he argues "approaches" the situation here. In that case the court said:
"* * * The record further discloses that subsequent to the judgment of divorce between the parties hereto, the father of the child and petitioner married, which marriage under the provisions of Article 198 of the LSA-Civil Code legitimated the child, Lena Williamston. * * *" 170 So.2d at 774.
The issue before the court in that case concerned the legal obligation of the mother's husband, who had not disavowed paternity, for support of her child. The presumption of paternity was upheld, and the obligation of support was imposed. The court's statement, quoted above, was at most obiter dictum, but we think more likely it was an inadvertent comment made in reciting the facts in the case. We cannot accept it as authority for the position appellant has argued here.
The court did not intend by the foregoing statement to recognize the legitimation of the child in question by the subsequent marriage of her parents. This is evidenced by the fact that the obligation of support was imposed upon the legally presumptive legitimate father. We think that court, considering the situation before them, would have put the support burden on the natural father if any ground could have been found upon which to do so.
Appellant's attorney attempts to draw an analogy between the alleged status of his client and an adopted child. An adopted child has all the rights of a legitimate child of the adopting parent and at the same time retains his rights of inheritance from his blood parents. This line of argument has no relevancy. The rights of adopted children are prescribed by special laws. LSA-Const. Art. 4, § 16 as amended; LSA-C.C. art. 214 as amended. *685 These laws expressly confer inheritance and other rights and duties "to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents." LSA-C.C. art. 214. These laws are stricti juris and cannot be extended by analogy to any other child. Furthermore, they do not recognize a dual status of legitimacy, and hence give no support to the theory urged by appellant.
It is regrettable that the parents of Isabelle (now the wife of Samuel Nettles) did not formally adopt her. This would have precluded this ugly litigation and given to her the right of inheritance for which moral persuasion speaks loudly, but in vain.
What we have said of the status of the child Isabelle is equally pertinent to her opponent, Glynn Barlow (Martin). For these reasons, we must recognize Glynn Barlow as the sole and only child and legal heir of McCullum Barlow and, as such, he is entitled to all the rights of inheritance which the law accords to one so related to the decedent.
The judgment appealed from is affirmed at appellant's costs.
Affirmed.
NOTES
[1] Act 50 of 1944.
[2] Act 482 of 1948.