262 So.2d 328

**Arlene King BABINEAUX**

v.

**PERNIE-BAILEY DRILLING CO. et al.**

No. 51569.

May 1, 1972.

Rehearing Denied June 5, 1972.

---

J. Minos Simon, Ronald E. Dauterive, Lafayette, for plaintiff-appellant-applicant.

Taylor, Porter, Brooks & Phillips, William A. Norfolk and John R. Tharp, Baton Rouge, for defendants-appellees-respondents.

BARHAM, Justice.

Arlene King Babineaux instituted this suit alleging that she, as surviving wife and in her capacity as representative of four minor children, was entitled under Civil Code Article 2315 to damages sustained through the wrongful death of Cecyl Paul Babineaux, alleged to be the husband of petitioner and the father of the children. The defendants are Pernie-Bailey Drilling Co., the deceased's employer; its liability insurer, Travelers Insurance Company; D. J. Doucet, sheriff; and two employees of the defendant employer who are also insured under the Travelers' policy. It is alleged that these two employees had been deputized by the sheriff of St. Landry Parish on or before February 9, 1967, and that on that date, while acting within the scope of their employment with Pernie-Bailey and while attempting to act as deputy sheriffs, they wrongfully shot and killed Cecyl Babineaux.

There are two issues presented for our consideration: (1) The question of the correctness of the courts below in their determination that Arlene King Babineaux had no individual right of action for the wrongful death of Cecyl Babineaux; and (2) the correctness of the courts below in holding that the minor Drake Paul Babineaux had no right of action for the wrongful death of Cecyl Paul Babineaux.

Defendants answered the original petition. On May 26, 1969, all defendants except Doucet filed a peremptory exception of no right of action in the plaintiff individually or in her representative capacity,

alleging that plaintiff's marriage to Babineaux was a complete nullity.[1] After a hearing the district court sustained the exception with leave for plaintiff to amend. On June 17, 1969, plaintiff filed her "second supplemental and amended petition", alleging that although she was married December 3, 1957, to Roland Cleveland Arnold, suit had been filed by Arnold against her for divorce in 1958, that since their separation she had not cohabited with him, and that she was informed by Arnold before her marriage to Babineaux on April 25, 1960, that the divorce had been obtained; that therefore if not the legal wife of Babineaux, she was his putative wife. She further alleged that Drake Paul Babineaux was in truth and in fact the child of Cecyl Paul Babineaux.

On June 20, 1969, defendants' second peremptory exception of no right of action, addressed to plaintiff's petition and her first and second supplemental petitions, was filed on the same grounds previously urged.

On June 30, Judge Fred A. Blanche, Jr., then a trial judge, after considering certain oral testimony as well as exhibits and record evidence, overruled the exception of no right of action. A pre-trial order was entered on October 7, 1969, signed by Judge Donovan W. Parker, who thereafter

was the presiding judge in this case. On November 12, 1969, the pre-trial order was amended to read in part as follows: "1. The question of whether or not Arlene Babineaux was the actual or putative wife of Cecyl Babineaux and the question of whether or not the children mentioned in the original petition are the legal or putative children of the union between Cecyl Babineaux and Arlene Babineaux are matters which already have been adjudicated by this court after an evidentiary hearing. The ruling of the court as to these questions is now the law of the case. These questions are not to be urged before the jury and no evidence as to these questions will be presented or attempted to be presented to the jury. There is reserved to the defendants the right to reurge these questions to the court on the condition that defendants meet all of the requirements of the law in such instances."

On that same day, November 12, a supplemental and amended answer to the original answer was filed by the defendants with the consent of the court. No answer has been filed to the allegations of the second supplemental and amending petition of June 17, 1969.

On January 5, 1970, a third exception of no right of action was filed, alleging the nullity of plaintiff's marriage to Babineaux

---

1. This exception is addressed "to plaintiff's petition and supplemental petition", but our record does not contain the first sup-

plemental petition—if there is such a document.

and alleging bad faith of plaintiff on the date of her marriage to Babineaux which would deny her the status of a putative wife. Although the first trial judge overruled the earlier exceptions of no right of action which had raised the issue of the nullity of plaintiff's marriage to Babineaux, he did so, according to oral reasons reduced to writing, on the ground that plaintiff could proceed under the presumption of a good-faith—putative—marriage. This last exception is the only one challenging her good faith. Hearings commenced on January 12, 1970, by Judge Parker, with additional evidence adduced including the testimony of plaintiff's prior husband Arnold. For written reasons assigned the exception of no right of action was maintained. The court found that when plaintiff married Cecyl Babineaux on April 25, 1960, she was married to and not divorced from Roland Cleveland Arnold, and that she knew she was still the legal wife of Arnold, who had not secured a divorce until March 2, 1962. The court also found that one of the children, Drake Paul Babineaux, who was born August 7, 1960, less than four months after the Babineaux marriage, could not be presumed to be the child of Babineaux. For these reasons plaintiff's suit on her own behalf and as representative of the minor Drake Paul Babineaux was dismissed with prejudice. The court further dismissed as of non-suit plaintiff's suit as representative for the other three minor children because she had not qualified to represent these minors.

From the judgment dismissing the suit in its entirety upon the trial of the exception of no right of action, the plaintiff appealed to the First Circuit Court of Appeal. That court amended the trial court judgment to overrule the exception of no right of action as to the claim filed for and on behalf of the minor children Dixie Anna Babineaux, Tracy Ann Babineaux, and Odie Dean Babineaux. Writs were not taken from this amendment of the trial court judgment, and it is therefore not before us. Writs were applied for by the plaintiff in her own behalf and in her representative capacity for the minor child Drake Paul Babineaux from the Court of Appeal judgment which affirmed the trial court's sustaining of the exception of no right of action in these regards. 250 So.2d 224.

■ Plaintiff-relator makes a two-pronged attack upon the determination of the courts below that she had no individual right of action for the wrongful death of Babineaux. It is first urged that the ruling upon the exception of no right of action by the first judge became the law of the case, and that no contrary subsequent ruling could be had on that issue. The Court of Appeal correctly held that the overruling of a peremptory exception is an interlocutory order, and that the second judge was permitted to enter a final decree

of dismissal based on that exception. Code of Civil Procedure Article 927 lists the peremptory exceptions. It further provides that the objection of no right of action, among others, need not be specially pleaded by exception or answer, but "may be noticed by either the trial or appellate court of its own motion". It is apparent that interlocutory orders overruling this and similar peremptory exceptions cannot be binding upon the trial court when it timely—but later—determines error of judgment based upon the matter as submitted or upon subsequent disclosures in the record which require a contrary holding. Art. 928, C.C.P., Comment (c).

■■ Moreover, the "law of the case" rule is merely a court practice usually applied at the appellate court level in regard to parties who have had the identical issue presented and decided previously by that appellate court in an earlier appellate proceeding in the same case. When the law of the case is applied to certain trial court rulings, it is for that court a discretionary guide. See Labourdette v. Doullut & Williams Shipbuilding Co., 156 La. 412, 100 So. 547 (1924). The law of the case rule cannot supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions. The case of Miller v. Dupuy, 19 La.Ann. 166 (1867), cited by plaintiff-relator, is inapposite and not dispositive of the issue before us.[2] Moreover, as noted in our description of the present proceedings, the second judgment on the exception of no right of action actually addressed itself to the third exception of no right of action, where for the first time an allegation that the plaintiff's bad faith denied her the right of a remedy was presented. The first and amended exceptions had presented only the question of the nullity of the marriage. The second trial judge had the discretion and, under the circumstances here presented, the obligation to rule upon the exception.

The second attack upon the trial court's ruling which maintained the exception of no right of action against Arlene King Babineaux suggests, first, that the exception would not admit of an evidentiary hearing, and, second, that the issue was one which should properly be left for a determination by the jury.

Our wrongful death statute, Civil Code Article 2315, reads in pertinent part: "The

2. The appeal in that case was not from a sustaining of an exception of no right of action after a similar exception had been overruled, but rather was leveled at a motion to suspend further proceedings which is not authorized in our practice. The court concluded that if a right of action existed, then the court proceedings could not be stayed to await the outcome of another suit. There was before the Supreme Court for its consideration only one decree on the exception of no right of action which had been overruled, and that interlocutory decree was reviewable upon appeal from the final judgment.

*right* to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive \* \* \* in favor of: (1) the surviving spouse and child or children of the deceased \* \* \*. The survivors in whose favor this *right of action* survives may also recover the damages which they sustained through the wrongful death of the deceased. \* \* \* " (Emphasis supplied.)

⬛ Pretermitting a discussion of whether a putative wife is a "surviving spouse" under Article 2315—see Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926 (1907); Jackson v. Lindlom, 84 So. 2d 101 (Orl.La.App.1956), writs refused—, we conclude that the exception addressing itself to the question of whether this woman was a putative wife properly inquires into the legal question of her right of action.

⬛ There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: "The former [no cause of action] is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter [no right of action] is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally." McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29–30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529–30.[3] The exception of no right of action, however, cannot be invoked to determine whether a particular defendant can stand in judgment in a particular case, i. e., whether the right or remedy can be exercised against that defendant.

In Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir. 1967), Mr. Justice Tate of our court, then writing for the Court of Appeal, correctly stated the purpose of the exception of no right of action:

"The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of *law* within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to

---

3. For further general discussion, see Note, 12 Tul.L.Rev. 315; McMahon, Civil Procedure, 24 La.L.Rev. 291, 301; McMahon, Civil Procedure, 25 La.L.Rev. 433, 438; Note, 27 La.L.Rev. 823; Tate, Civil Procedure, 28 La.L.Rev. 386, 403.

whether this particular plaintiff does · or does not fall within the general class having legal interest to sue upon the cause of action asserted. * * *

"In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming (for the purpose of deciding the exception) that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727."

▬▬ While in an exception of *no cause of action* everything in the pleadings is accepted as being true and evidence is inadmissible in a determination of the validity of the exception, in the exception of *no right of action* evidence is admissible when necessary and even in order to disprove the allegations in the pleadings. Although the general policy in Louisiana is against the piecemeal trial of suits on their merit issues, the exception of no right of action is "a threshold device for terminating a suit brought by one without legal interest to assert it". Bielkiewicz v. Rudisill, supra; see Reporter's Comment (b) 5, C. C.P. Art. 927.

▬▬ The question of whether a plaintiff is a "surviving spouse" who can

maintain a wrongful death action under Article 2315 presents for a court's determination whether the particular plaintiff falls within the class having a legal interest in the legal remedy there afforded. See Ellis v. Hayes, 168 So.2d 885 (La.App. 2nd Cir. 1964), and White v. Charity Hospital of La. in New Orleans, 239 So.2d 385 (La. App. 4th Cir. 1970). In the latter case it was correctly said that an exception of no right of action will not lie to a suit for wrongful death instituted by a true surviving spouse, but that it would lie to the action of one who claimed to be, but in fact was not, the surviving spouse.

▬▬ The exception here being truly an exception of no right of action, there is no. merit in the plaintiff's argument against an evidentiary hearing on the exception.

▬▬ The next question before us is whether our civil procedure allocates to the trial judge in jury cases the determination, in limine, of the right of the parties to bring the action where factual evidence must be evaluated in order to arrive at the answer. Our Code of Civil Procedure Article 929 states that the declinatory, dilatory, and peremptory exceptions, when pleaded before answer, "*shall* be tried and decided in advance of the trial of the case".[4]

---

4. Although the Code language appears to be unequivocal, as a matter of fact trial courts every day defer peremptory exceptions, particularly the exception of prescription, to the trial on the merits.

When prescription is pleaded as the principal basis of a claim to title or possession of land, the exception is often laid over. This is apparently accomplished without objection and with acquiescence of all parties.

When the peremptory exception is pleaded in the answer but prior to trial, it may be disposed of on the trial or in limine. See Redactors' Comment (b) under C.C.P. Art. 929.

We could, under the strict language of the Code and the particular facts of this case, apply the mandate of our Code of Civil Procedure that this peremptory exception of no right of action had to be tried "in advance of the trial of the case", since, as we have previously noted, no answer has been filed to the last amended and supplemental petition, the petition which raised the issue of plaintiff's good faith in her marriage to Babineaux. However, even if we were to consider the exception as filed in the answer or after answer, we would find no abuse of discretion in the trial court's disposing of the exception in limine.

Even in federal practice, where judge functions are far more limited in pre-trial proceedings in jury cases than in our state courts, certain issues are disposed of in limine by the trial judge without jury consideration where a question of law is presented as to whether a plaintiff has a right to claim a particular remedy. Both the motion to dismiss for failure to state a claim, Federal Civil Procedure Rule 12(b)(6), and the motion for judgment on the pleadings, Rule 12(c), which convert into motions for summary judgment under Rule 56 where matters outside the pleadings are considered, are disposed of by the trial judge alone. See Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953); Archer v. United States, 217 F.2d 548 (9th Cir. 1954), cert. denied 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745; Rodgers v. Baltimore & Ohio R. Co., 323 F.2d 996 (2nd Cir. 1963), cert. denied 376 U.S. 932, 84 S.Ct. 701, 11 L.Ed.2d 651; Anno., 2 A.L.R.Fed. 1027, 1037; 3 Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.) § 1232.1, fn. 31.3, and § 1234; Wright & Miller, Federal Practice and Procedure: Civil, §§ 1347–49, 1357, 1358, 1360, 1366; 2A and 6 Moore's Federal Practice, §§ 12.01–12.23, 56.0–56.27.[5]

The plaintiff is not denied a trial by jury in Louisiana simply because, under

5. Federal jury practice differs greatly from our state practice because of the distinctions between equity and law claims in determining jury and non-jury cases and issues. See James, Civil Procedure (1965), for a discussion of the distinctions of fact and law issues (§ 7.10) and of equity and law claims (§ 8.7) for the purpose of assigning judge and jury functions. For an excellent discussion of the distinctions between common law judge and jury functions, law-fact issues, and law-equity claims, see Judge John Minor Wisdom's opinion in Melancon v. McKeithen and consolidated cases, No. 3390 on the docket of the United States District Court for the Eastern District of Louisiana (1972), —— F.Supp. ——. Before a common law claim can be presented to the jury, it may be necessary that an equity claim be adjudicated by a judge; therefore in common law jurisdictions many fact issues are denied jury deliberation.

our Code of Civil Procedure, certain issues of law are either required or permitted to be disposed of by the judge alone in advance of the trial of the case.[6]

 We have reviewed the trial court record and are in agreement with that court's factual determination, affirmed by the Court of Appeal, that this bigamous marriage was not contracted by Arlene Babineaux in good faith. We are constrained to hold with the other courts that she had knowledge of the legal bar (her undissolved marriage to another) which made the contract of marriage to Babineaux an absolute nullity in respect to her. She is, therefore, not entitled to the civil effects of a putative marriage under Civil Code Article 117.

 We move next to a consideration of the plaintiff's right of action for the benefit of the minor child Drake Paul Babineaux, who, according to the petition, the birth certificate attached, and the evidence taken on the exception, was born to Cecyl Paul Babineaux and Arlene Joyce King on August 7, 1960, at a time when in fact Arlene King was married to Arnold. The union between Cecyl Babineaux and Arlene King was a bigamous union. The child Drake Paul, born less than 180 days

after the bigamous marriage ceremony, seeks here to bring this action for the wrongful death of his alleged father on the basis that he is the child of that man. It is alleged that under Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and Levy v. State through Charity Hospital of La. at N. O. Bd. of Ad., 253 La. 73, 216 So.2d 818 (1968), he is entitled to maintain the right of action for wrongful death under Civil Code Article 2315 even if he is illegitimate issue.

Civil Code Article 184 reads: "The law considers the husband of the mother as the father of all children conceived during the marriage." The Court of Appeal made the presumption of law under this article an unrebuttable presumption in this case. It denied any right of action in behalf of this child born during the marriage of Arnold to his mother and also during the bigamous marriage of Babineaux to his mother, declaring Drake Paul to be the legitimate child of Arnold, without a right to claim to be the illegitimate or legitimate child of Babineaux. Our careful scrutiny of what this record before us discloses and fails to disclose requires us to reverse this holding.

On the face of the pleadings and the entire record the following pertinent facts

---

6. Since the right of an appellate court to review facts has been upheld as constitutional by a federal court in Melancon v. McKeithen and consolidated cases, No. 3390 on the docket of the United States District Court for the Eastern District of Louisiana (March, 1972), no prejudice befalls this plaintiff because of our review of the facts which here sustain the trial judge and would compel us to reverse any jury verdict to the contrary.

are disclosed: According to the judicial admissions made in a petition for divorce, filed by Arnold on January 12, 1962, Arnold and the mother had been separated since June 8, 1958, and had not cohabited during that time. In an earlier petition filed by Arnold on July 10, 1959, Arnold declared the same separation date and that his wife had been and was then living in open adultery with an unknown man at the home of her parents in Baton Rouge. In the suit filed in the Family Court for the Parish of East Baton Rouge by the mother of Drake Paul, seeking a decree of separation from bed and board, it was alleged that she had not lived with her husband Arnold since June 8, 1958. Of these petitions filed in the family court, only the petition for divorce filed by Arnold on January 12, 1962, was ever prosecuted to judgment, and he finally obtained a divorce on March 2, 1962. In this petition for divorce it was also alleged that there was only *one child* born issue of the marriage between Arnold and Arlene King and that that child was *George Blaine Arnold, born August 28, 1957.*

The birth certificate of Drake Paul Babineaux shows that on August 7, 1960, he was born to Cecyl Paul Babineaux and Arlene Joyce King (Babineaux) at *Lafayette, Louisiana.* The marriage certificate shows that Cecyl Babineaux and Arlene King were married in *Lafayette* on April 25, 1960. The petitions for divorce and separation filed in the family court show the residence of Arnold to be the *Parish of East Baton Rouge.* The final suit alleged abandonment from the matrimonial domicile in *Baton Rouge,* and that the defendant wife had continuously remained away from that matrimonial domicile.

It is important to recognize that the child here has never enjoyed the reputation of being the legitimate child of Arnold, but has apparently always enjoyed the reputation of being, along with three other children, the legitimate issue of Babineaux.

In addition to Arnold's denial in these petitions of the birth of more than the one child (not Drake Paul) during the marriage, Arnold in his testimony on the exception of no right of action dealing with the question of the good faith of Arlene King Babineaux in her marriage to Cecyl Babineaux stated: " * * * In fact, we would have had our divorce several years before it became in effect *if I could have found Miss Babineaux, Mrs. Babineaux.*" He further testified that he would like to help her "in her moment of sorrow and her concern for *her* children, which I didn't know existed until I read it in the paper and it gave a list of the chil [sic], *surviving children of the deceased,* I told her that I had sorrow for her and for the children and if there was anything that I could do I would like to help. * * *" (Emphasis supplied.)

Drake Paul was, therefore, conceived and born during the marriage of his mother and Arnold and was conceived before and born during the bigamous marriage between his mother and Babineaux. He was perhaps conceived and certainly born and reared in a city different from that in which the husband Arnold lived, and he was registered in the name of the second husband of his mother.

Absent from the record before us is any proof of a judgment of disavowal by Arnold of Drake Paul, although there is a statement that only one child was born of the marriage between Arnold and the mother of Drake Paul. There is no evidence in the record that Arnold knew or now knows that a second child was born to Arlene King Babineaux during his marriage to her or within 300 days after the decree of divorce. The record also discloses that the child was born more than 300 days after their voluntary separation. The decree of divorce must, because of its basis, recognize no cohabitation during the separation.[7] On the facts shown as well as on the facts not disclosed the status of the child Drake Paul cannot be determined now in this action for wrongful death. The action en desaveu is only reserved to the husband of the mother during his lifetime.

If we were to determine the status of this child in this collateral attack upon his filiation,[8] we could well determine the wrong status and even place him in a position of occupying none of the statuses in regard to any particular father as provided in the Code. We can make no final determination of his status on the record before us, and it may be that it can be determined only through other legal proceedings. The child could very well be a child subject to the action of disavowal by the legal husband of the mother, Arnold.[9] The child might have already been the subject of

7. We do not comment upon the availability of a ground for disavowal based upon a birth 300 days after a voluntary separation, this issue not being before us.

8. We pretermit the question of whether this attack can be made for the facts here are not sufficiently developed to permit such a determination.

9. In Feazel v. Feazel, 222 La. 113, 62 So. 2d 119 (1952), we said that if the proof of adultery coincides with the conception of the child and the birth is concealed, the action of disavowal would be available under Civil Code Article 185. We cited 4 Baudry-Lacantinerie, Traité de Droit Civil (3e éd. 1907), §§ 489–490. We noted that Baudry-Lacantinerie considered as one of the most significant examples of concealment the registry of the child as belonging to a father other than the husband. Under the evidence presented here the possibilities required in Feazel for an action en desaveu certainly exist: Adultery, conception during the adulterous activity, birth in a place removed from the husband of the mother, registry of the birth in the name of one other than the husband of the mother, conception before and birth within 180 days after a marriage ceremony between the adulterous parties. See Fn. 12, infra. Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956),

such a disavowal action or the circumstances might be such that under Article 191 the child is still subject to the action of disavowal.

 The exception of no right of action considered was not couched in the terms necessary to put at issue the right of action on behalf of the child Drake Paul Babineaux. The nullity of the marriage and the bad faith of the wife-mother are not per se sufficient to strike this child's right of action. The good faith of Cecyl Babineaux has never been put at issue, and

from the record before us it appears that he was in good faith although his wife, Arlene King Babineaux, was in bad faith.

This child may very well be the legitimate child of Arnold alone,[10] the legitimate child of Babineaux alone,[11] or the legitimate child of Arnold and Babineaux.[12] To determine the legal status of this child there must be a full consideration of all the facts and the pertinent law: Civil Code Articles 187, 188, 185, 191 (before and after the 1968 amendment),[13] 178, 179, 180, 117, and 118. We are required to do

misapplied Feazel, supra, by confusing and commingling as ground for disavowal adultery and concealment with remoteness. Moreover, while Williams is correct in stating that the Code does not provide for an action en desaveu based *solely* upon blood-grouping tests, this is no basis for declaring that scientific evidence may not be used in connection with the specific grounds allowed in the action en desaveu for the purpose of supporting these grounds. Its evidentiary value is to be weighed in accord with the validity given it by the experts and upon the determination of the court of its evidentiary weight in the light of all evidence. For general discussion of the action en desaveu, see Comments, 13 La.L.Rev. 587 and 14 La. L.Rev. 401; Pascal, Persons, 14 La.L.Rev. 114, 121; Comment, 23 La.L.Rev. 759.

10. La.Civ.Code Art. 184.

11. The child here was "born" after the second marriage, not "born out[side] of" that marriage. La.Civ.Code Art. 198. See also 1 Pt 1 Planiol, Traité Élémentaire de Droit Civil (La.St.L.Inst. trans. 1959) §§ 1093, 1097, 1113, 1387–91, and 1418; Pascal, Who Is the Papa?, 18 La. L.Rev. 685. Cf. Succession of Barlow, 197 So.2d 682 (La.App. 4th Cir. 1967), writs

refused, 250 La. 917, 199 So.2d 921; George v. Bertrand, 217 So.2d 47 (La. App. 3rd Cir. 1969), writs refused, 253 La. 647, 219 So.2d 177 (majority and dissent) ; both cases considering legitimation, not legitimacy, of an already legitimate child of a pre-existing marriage. See Note, 16 Loyola L.Rev. 235, and Tete, Persons, 30 La.L.Rev. 171.

12. La.Civ.Code Arts. 960 and 190 should be read together for an example of when two presumptions of legitimacy can exist simultaneously. Cf. Art. 178; Succession of Barlow, supra, and George v. Bertrand, supra, where the courts were considering the child as occupying both a *legitimate* and a *legitimated* status as opposed to a *double legitimate* status. See also Degas v. Degas, Court of Appeal of Paris, Dec. 31, 1925, and Court of Cassation (Civil), Jan. 8, 1930, and the juridical note by F. Gény; and Dame Veuve Dewalle v. Lanchot, Court of Appeal of Douai, Dec. 7, 1931, and Court of Cassation (Civil), July 2, 1936, and the juridical note of E. de Lagrange. (English translations are available in this court and are to be published.)

13. Civil Code Article 191 was amended in 1968. Some of the former provisions

justice as the case is postured before us. See C.C.P. Arts. 2164, 5051; La.Civ.Code Art. 21. The trial court is also required to apply the substantive law and decide substantive issues with due regard for the fact that rules of procedure implement that law and are not an end in themselves. C.C.P. Art. 5051.

The court below acted precipitately in striking Drake Paul Babineaux's right of action under the pleadings and evidence presented to it. We will remand to the trial court for further proceedings in this case.

For the reasons here assigned we reverse the judgments of the Court of Appeal and the trial court insofar as they dismissed on the exception of no right of action the plaintiff's claim for the benefit of the minor Drake Paul Babineaux, and remand the case to the trial court for proceedings not inconsistent with the views herein expressed. The trial court is granted a specific right to stay these proceedings if an ancillary proceeding is instituted and its adjudication is essential to the validity of a judgment in this proceeding. In all other respects the judgment of the Court of Appeal is affirmed.

McCALEB, C. J., concurred in the decree.

DIXON, J., concurs with reasons.

of that article would apply here (pre-1968), and perhaps some of the provisions of the new law (post-1968) could

DIXON, Justice (concurring).

I fully concur, except that I would not suggest that Arnold had more than six months (C.C. 191) from the date he testified to bring an action en desaveu. If he did not at that time actually know of the birth of the child, the circumstances were such that he should have been placed on notice, and should have known.

apply according to the actual circumstances.