JiPLOTKIN, Judge.
This case presents the novel issue of whether the Civil Service Commission can dismiss a civil servant’s appeal on the grounds that no formal disciplinary action was taken against the employee, although he was threatened with and subject to suspension and/or dismissal by his employer for an alleged conflict of interest in violation of the City and State Codes of Ethics. Randolph Scott, appellant, appeals a decision of the Civil Service Commission holding that the plaintiff failed to state a cause of action because no disciplinary action was taken against him. We find that Scott was subjected to disciplinary action and the Civil Service Commission has jurisdiction over his appeal. We reverse the decision of the Civil Service Commission and remand for further proceedings.

FACTS:

Randolph Scott is employed as an Administrative Analyst with permanent status by the City of New Orleans. He has worked for the City since 1973, and was promoted to his current position in 1983. Scott testified before the Civil ^Service Hearing Examiner that his job entails monitoring the performance of programs that fall within his department, the Division of Housing and Neighborhood Development. He also testified that he is the sole shareholder and president of R.S. Security, Inc. This business provides security guards to locations throughout the state of Louisiana.
In early September, 1994, Scott mailed solicitation letters to several New Orleans *220 establishments in hopes of sparking interest in his security guard business. One such letter was sent to Covenant House, a nonprofit organization which houses and counsels young adults. Covenant House is one of the programs that Scott monitors through his employment with the City of New Orleans. The Director of Covenant House contacted Scott in response to the letter to inquire further about R.S. Security providing guards for the shelter. On September 28, 1994, Scott sent an interoffice memorandum to his supervisor, Bruce Burley, advising him that he would probably enter into a contract to provide security to Covenant House and that if this created a conflict of interest, he would like to be transferred from the Covenant House program. A response dated October 6,1994. was sent to Scott which advised him that his first responsibility was to the City of New Orleans and that no transfer would be made. As a result of this response, Scott sent an interoffice memorandum to Mr. Burley’s superior, Glenis M. Scott, Sr., dated October 13, 1994, once again asking for a transfer, and that the matter be reviewed under the conflict of interest regulations. Shortly after this memo was sent, but before a response was received, Scott entered into the contract with Covenant House to provide security. The date on the contract is October 17,1994.
Scott’s superiors requested advice on this matter from the City Attorney, Avis Marie Russell. On December 29, 1994, she determined that the contract | .«¡between R.S. Security and Covenant House violated the State and City Codes of Ethics. Specifically, she decided that when a civil service employee secures a personal contract from an agency receiving city funding while that individual was assigned as a monitor for the Department of Housing and Neighborhood Development, a conflict exists. The statement stated that Scott should be advised that he was in violation of the Code of Ethics. The letter goes on to state:
The Code of Ethics for the City of New Orleans provides that classified employees shall be subject to disciplinary action. You might therefore advise the employee that unless he takes corrective action by either terminating the contract, terminating his interest in the corporation or resigning from the employ of the City of New Orleans, that a complaint will be filed with the Civil Service Commission in accordance with the provision of the Code of Ethics for the City of New Orleans.
If it becomes necessary to file a complaint with the Civil Service Commission or take disciplinary action, please feel free to contact this office for assistance.
The Director of the Department of Neighborhood-Development, Glenis M. Scott, Sr., then officially responded to the plaintiff’s request for advice and/or a transfer. That memo stated:
We received a response to our request for [a] legal opinion from the City’s Law Department as it relates to your company doing business with an agency receiving funding for [sic] the City of New Orleans-Conflict of Interest. The legal opinion rendered gives you three (3) options and they are listed below:
(1) Terminate your interest in the company;
(2) Resign from the employment of the City of New Orleans;
(3) Terminate your contract with Covenant House of New Orleans.
A copy of this letter was also sent to all of Scott’s superiors, and placed into his personnel file. The letter was dated January 18, 1995 and required a response by the close of business on the same day. Scott then requested an extension of time to decide what he was going to do. This was granted and he was given until |4 January 30, 1995 to choose one of the three options. At this point, Scott retained an attorney, who sent a letter to his superiors, arguing that there was no conflict of interest. In response to the letter from Scott’s attorney, the Executive Assistant to the Mayor, Vincent T. Sylvain, issued another statement to Scott ordering him to choose one of the three options. It stated that he was “directed to comply with [one of the three options] by stating in written form your option or further disciplinary [action] will be taken.” This letter is dated February 6, 1995. On that same day, Scott met with *221 Mr. Sylvain to discuss the matter. He testified that he was threatened with suspension if he did not comply with the order; that if the matter was still not resolved after suspension, he would be fired; and that Mr. Sylvain stated that he did not care if he was right or wrong, he was willing to take his chances in court. After Scott testified as to this meeting, no farther evidence was presented to rebut his testimony.
On February 14,1995, Scott filed a petition for a temporary restraining order and a preliminary injunction claiming that the City issued him ultimatums that constituted discipline related to violations of the City and State Codes of Ethics. The City filed an exception for lack of subject matter jurisdiction, claiming that the Civil District Court is without jurisdiction to decide this issue. On February 17, 1995, the exception was sustained, thus dismissing the plaintiffs suit. Scott appealed that judgment to this Court, however, the appeal was subsequently dismissed after the Civil Service appeal was filed.
On February 15, 1995, Scott chose to terminate the contract between R.S. Security Inc. and Covenant House, under protest, with the intention of appealing to the Civil Service Commission, after the City objected to the jurisdiction of the Civil District Court.
IgOn February 17, 1995, Mr. Scott informed the Director of Covenant House that his company would no longer be able to provide security for that establishment, thereby forfeiting his contract with Covenant House.
Scott then filed an appeal with the Civil Service Commission after the Civil District Court sustained the City’s exception of lack of subject matter jurisdiction. On July 14, 1995, the City filed an exception of no cause of action, alleging that pursuant to Civil Service Rule II sec. 4.1, no disciplinary action was taken against Scott, therefore the Commission has no grounds upon which to consider an appeal. On July 24, 1995, the matter was set for hearing before a Hearing Officer with the Commission. The City raised the issue that its exception had not been ruled upon, while Scott claimed that he had not been served with the exception. The Hearing Officer continued the hearing to reschedule arguments on the exception. On August 24, 1995, the Commission overruled the exception of no cause of action after hearing arguments on the matter. On December 11, 1995, the Hearing Officer conducted a full evidentiary hearing on the merits. However, on January 10, 1996, without rendering an opinion on the merits, the Commission maintained the exception of no cause of action, holding that the issue was moot because no discipline had been taken against Scott. It is from this decision that Scott now appeals.

ASSIGNMENT OF ERROR 1:

By this assignment, the appellant argues that the doctrine of “law of the case” governs the Commission’s conduct, wherein it maintained the exception of no cause of action, after a hearing on the merits, although it initially overruled the exception. Under the “law of the case” principle, an appellate court will generally not reexamine a prior ruling in the same case, unless the prior ruling is clearly |6erroneous and would result in a manifest injustice. Turner v. Pelican, 94-1926 (La.App. 4th Cir. 9/15/95) 661 So.2d 1065, 1072, writ denied, 95-2513 (La.12/15/95) 664 So,2d 441; Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4th Cir. 4/24/96) 673 So.2d 1181, 1186. At the trial court level, the doctrine is not mandatory, rather it is considered a discretionary guide. Zatarain, at 1186; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). Scott believes that if the doctrine of “law of the case” is applied, the Commission could not consider the exception of no cause of action once it was overruled and once a hearing on the merits occurred. But, we find that the doctrine of “law of the case” is inappropriate in this ease because a judgment denying a peremptory exception is not binding on a trial court; thus, the court may subsequently grant the exception when succeeding record evidence so requires. Babineaux, at 332-33.
La. C.C.P. art. 927(B) states that “the failure to disclose a cause of action ... may be noticed by either the trial or appellate court of its own motion.” This has been interpreted to mean that an exception of no *222 cause of action may be pleaded by the parties or noticed by a trial or appellate court on its own motion at any time. Brown v. Ebasco, 462 So.2d 1235 (La.1985); In re Medical Review Panel for Claim of Brunet, 578 So.2d 1011, 1013 (La.App. 4th Cir.1991). Further, a court may reconsider a previously-denied exception of no cause of action which has not been reasserted by the parties, even after a trial on the merits of the ease. In re Young, 461 So.2d 636, 637 (La.App. 1st Cir.1984). Essentially, the Civil Service Commission denied the City’s exception of no cause of action but after an evidentiary hearing was held, noticed on its own motion, that the plaintiff did indeed fail to state a cause of action. We hold that the Commission had the procedural authority to consider on its own motion if the plaintiff adequately stated a cause of action. However, we disagree with the conclusion that no discipline |7was taken against the plaintiff, and overrule the Commission’s exception of no cause of action.

ASSIGNMENT OF ERROR 2:

The appellant alleges that the Commission erred in granting the City’s exception of no cause of action and dismissing the appeal. The Commission found that no disciplinary action was taken against Scott, therefore, there was nothing from which to appeal. The opinion states: “[I]t is our opinion that the Appellant received no disciplinary action once he complied with the ultimatum issued by the Appointing Authority.” Civil Service Commission, Docket No. 5171 p. 3 (emphasis added). However, Civil Service Rule II sec 4.1 provides that “[rjegular employees in the classified service shall have the right to appeal disciplinary actions to the Commission, including dismissal, involuntary retirement, demotion, suspension, fine or reduction in pay.” (emphasis added). Because Scott was threatened with suspension and/or dismissal, he was clearly subject to disciplinary action.
The plaintiff received two interoffice mem-oranda dated January 18, 1995, and February 6, 1995, outlining three options that he could take in his situation. It stated that he could (1) terminate his interest in R.S. Security, Inc.; (2) resign from the employment of the City of New Orleans; or (3) terminate his contract with Covenant House of New Orleans. Both memoranda indicate that Scott’s superiors received copies of this letter and a copy was placed in his personnel file. The February 6, 1995 memorandum states that it is the opinion of the City Attorney that a conflict of interest does indeed exist. Because appellant’s superiors believed that there was a conflict, it follows that they also believed that Scott was in violation of the City and State Codes of Ethics. Thus, the options that Scott |8was asked to choose from constitute discipline for his violation of the City and State Codes of Ethics. Also, all three options were objectionable to Scott because all three would cause financial or property loss to Scott. Thus, which ever option he chose would constitute discipline; and if he refused to choose one, he would be suspended or dismissed. Suspension or dismissal constitutes discipline under Civil Service Rule II, sec. 4.1.
Furthermore, the uncontroverted testimony of Scott clearly shows that he was the subject of discipline:
I also had a meeting with Mr. Sylvain in which he indicated those three options ... that I must make one of the three options; that there was no other option; that they were going, that he was going to get me concerning this, ... if I did not make a choice of the three, ... he will seek termination of my employment.
* * * * * *
He indicated that he intended to suspend me if I did not select one of the three options as indicated by the City Attorney in Mr. Scott’s correspondence. And ... after suspension, he would terminate me from employment. And he indicated that, also, that [it] didn’t matter whether or not he was right or wrong in this ease. He indicated if he loses, he will just lose, that’s all.
Also, the memorandum issued by Mr. Sylvain to Mr. Scott ordering him to select one of the options, clearly stated that if he did not do so, “further disciplinary [action] will be taken.” Thus, Mr. Sylvain believed that by mandating that Scott choose one of the options, Scott was being disciplined for the conflict of interest, and that if he did not *223 make a selection, he would be disciplined further. Scott also testified regarding standard procedure for avoiding the possibility of such conflicts. He stated that it was common practice for analysts to request a transfer to another project if circumstances so require, but that in his ease, his superiors would not consider this option.
19The opinion of the Civil Service Commission explains the standard of review for deciding if the Appointing Authority had good and lawful cause for disciplining an employee. However, it then states that no discipline was taken against appellant once he complied with the ultimatum of the Appointing Authority. However, we find that the options offered by the City and threats of job suspension or dismissal made to Mr. Scott constitute discipline, within the meaning of Civil Service Rule II, see. 4.1. Since the Commission has subject matter jurisdiction over this issue and we find that Scott was disciplined, we reverse and overrule the exception of no cause of action and remand for a decision on the merits.

ASSIGNMENTS OB ERROR 3,4,5,6:

Mr. Scott raises several other assignments of error, all arguing the merits of the case. He argues that the City Attorney erred in finding that he violated the City Code of Ethics; the City Attorney erred in finding that he violated the City Charter; the Appointing Authority erred in taking disciplinary action against him based on alleged violations of the State Code of Ethic; and the Civil Service Commission erred in failing to find that he had been politically discriminated against by the City Attorney and the Appointing Authority. Because the Civil Service Commission dismissed the case for failure to state a cause of action, these issues were never considered on the merits and we will not consider them here. These are issues to be decided by the Commission when it considers the merits of the case.

CONCLUSION:

lioWe find that appellant was subject to discipline of suspension and/or dismissal and the Commission should not have dismissed the case for failure to state a cause of action. We reverse the decision of the Civil Service Commission and remand the case for further proceedings on the merits.

REVERSED AND REMANDED.