*444 TOBIAS, J.,
Concurs and Assigns Reasons.
|,I respectfully concur in order to assign additional reasons in support of the majority’s opinion.
As the Louisiana Supreme Court stated in Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1060, 1095-96, 262 So.2d 328, 383-34 (1972),
There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: ‘The former (no cause of action) is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter (no right of action) is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally.’ McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529-30. The exception of no right of action, however, cannot be invoked to determine whether a particular defendant can stand in judgment in a particular case, i.e., whether the right or remedy can be exercised against that defendant. [Footnote omitted; emphasis supplied.]
|2In my view, the plaintiff/appellant, Eagle Pipe and Supply, Inc. (“Eagle”), has an interest in asserting that one or more of the defendants may have negligently caused damage to the property before it was acquired. Ever since federal law permitted the United States Environmental Protection Agency (“EPA”) to force any person in the chain of title to immovable property or who contaminated immovable property to remediate the contamination, such as NORM or TENORM, and Louisiana state law allowed the Louisiana Department of Environmental Quality to protect Louisiana’s environment from contamination, Eagle concomitantly should have a right to seek a redress in our courts against those who cause environmental damage. La. C.C. art. 2315; La. Rev.Stat. Title 30, Subtitles I and II; La. Rev.Stat. 30:2271, et seq.; La.Rev.Stat. 30:2285, et seq.; Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601, et seq., as amended by Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499 (1986).
Additionally, Eagle should be able to assert a claim against a person causing damage to its immovable property to remediate the damage; although that claim has not yet been made, the plaintiff should be allowed to amend its petition to do so.
As noted in Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117,
In 1981, in a routine well logging operation on two Occidental Petroleum Corporation platforms in the North Sea, drillers registered elevated levels of radioactivity from the radioactive scale in equipment on the platforms and the tubing in the well holes. The levels of radiation required Occidental to report the discovery to U.K. governmental authorities. The National Radiological Protection Board (“NRPB”), under contract to the U.K. government, did further testing *445 and identified the radioactive component as radium-226, in the form of radium sulfate, co-precipitated with barium sulfate, calcium sulfate, and strontium sulfate. Radium-226 has a half-life of approximately 1,600 years.
Is All major oil companies operating in the North Sea, including Exxon, were immediately made aware of Occidental’s discovery through the United Kingdom Offshore Operators Association (“UKOOA”), the oil industry trade association. As a result of the discovery, the U.K. Government held a major conference in 1983 for the oil companies dedicated solely to the NORM problem. In 1985, the UKOOA Safety Committee published NORM safety guidelines and a NORM Reference Manual, which were distributed to all oil companies.
On April 10, 1986, Chevron identified radium-226 in oilfield equipment at a well site near Brookhaven, Mississippi. As a result of Chevron’s discovery, Exxon conducted surveys at four Exxon Mississippi well sites in June 1986 and found radium-226 at those sites. Later that month, Exxon representatives met with other oil company representatives at the Alabama/Mississippi Mid-Continent Oil & Gas Association meeting to discuss the radioactive scale problem. Following the meeting, Exxon industrial hygienist, Mr. Lindsay Booher, reported to Mr. M.F. Terrell, a production manager for Exxon’s Eastern Division, which covered Louisiana, Mississippi, Alabama, and Florida, advising him what he had found. In a letter dated June 19, 1986, Mr. Booher informed Mr. Terrell that where oilfield equipment was opened up for maintenance, inspection, and cleaning, there would be a human health concern, and if equipment contaminated with radioactive scale was turned over to contractors for cleaning, those contractors had to be notified of the presence of radioactivity. ITCO [the company cleaning pipe on the Gre-fers’ immovable property] was Exxon’s main cleaning contractor. Over the next several months, Exxon prepared a videotape and a letter advising cleaning contractors of the NORM problem and how to manage it.
Id., pp. 3-5, 901 So.2d at 1125 [footnotes omitted].
Although the appellees assert that Eagle was a sophisticated purchaser, what Eagle knew and when it knew about the existence of NORM is a question of fact not addressed on an exception of no right on action.[1] If Eagle knew of the potential problems associated with NORM on 22 April 1988, the date it purchased the property, it could have obtained a subrogation of rights from its vendors against |4any person who contaminated the property. In such an instance, I would agree with the dissent that the exception of no “right” of action should be maintained, although I would allow Eagle to amend its petition to state a “right”[2] of action. See Prados v. So. Cen. Bell Tel. Co., 329 So.2d 744 (La.1975) and Hopewell v. Mobil Oil Co., 33,- *446 774 (La.App. 2 Cir. 11/1/00), 770 So.2d 874, reversed 00-3280 (La.2/9/01), 784 So.2d 653; Babineaux, supra.
Because of the EPA’s right to seek remediation of the NORM from the former property owners and those who contaminated the immovable property, Eagle should likewise have that right and also a right to claim damages, thereby creating an exception to the general rule of Prado and Hopewell.

. It is quite likely that Eagle’s predecessors in title and vendors, defendants (Robert Bridges, Patsy Trimble Bridges, and Edmund J. Bau-doin, Jr.) did not know of the potential for NORM to be present on their property when they sold it to Eagle.

. I place the word "right" in quotation marks because in my view, the exception of no right of action and no cause of action merge into one in the case at bar. In my view, the issue is best decided on an exception of no cause of action or motion for summary judgment rather that on an exception of no right of action because the exception of no right of action primarily addresses whether the person asserting a claim has an interest in the outcome of the litigation. Certainly Eagle has an interest in asserting the claim.