NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-216

MARLIN KEYS

VERSUS

STATE OF LOUISIANA, DEPARMENT OF SOCIAL SERVICES, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11C2154D
HONORABLE AARON FRANK MCGEE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

Jennie Porche Pellegrin
Laborde & Neuner
1001 W. Pinhook, Suite 200
Lafayette, LA 70503
(337) 237-7000
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana, Department of Social Services

**Jeremy A. Hebert**
**Becker & Associates**
**P. O. Box 52085**
**Lafayette, LA 70505**
**(337) 233-1987**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Marlin Keys**

**EZELL, Judge.**

Marlin Keys appeals the decision of the trial court granting an exception of no right of action in favor of the State of Louisiana through the Department of Children and Family Services (DCFS). For the following reasons, we affirm the decision of the trial court.

This case arises out of the death of Mr. Keys' two-year-old daughter, Marla. Marla Keys was born in October 2007 to Mr. Keys and Romona Toussaint, who were never married. Mr. Keys cohabitated with Ms. Toussaint for two years after the child's birth, until he learned Ms. Toussaint had been unfaithful to him. Mr. Keys moved out of the couple's apartment, and Ms. Toussaint and Marla began living with another man, Napoleon Prudhomme. Mr. Keys asserts that, at that time, Ms. Toussaint began preventing him from seeing Marla and keeping her whereabouts hidden. Mr. Keys alleges that these actions led him to begin suspecting potential abuse or neglect, leading him to file complaints with the DCFS between December 2009 and May 2010. These complaints went uninvestigated. On or about May 5, 2010, Mr. Prudhomme assaulted Marla, causing her to become unconscious. On May 6, 2010, she died from head injuries sustained from violent shaking.

Mr. Keys filed the current suit against the DCFS and others on May 6, 2011. His petition did not contain a prayer to be legally recognized as Marla's father. The DCFS filed several exceptions, including an exception of no right of action. Because Mr. Keys had not filed a filiation action within the preemptive period set forth by La.Civ.Code art. 198, the trial court granted the exception of no right of action. From that decision, Mr. Keys appeals.

On appeal, Mr. Keys asserts five assignments of error. However, because they all deal with his claim that the trial court erred in granting the DCFS' exception of no right of action, we will address them together as one.

This court recently ruled in a case very similar to this one, which we find to be controlling. As noted in *Udomeh v. Joseph*, 11-342, pp. 2-3 (La. App. 3 Cir. 10/5/11), 75 So.3d 523, 525, *writ granted,* 11-2839 (La. 3/30/12), 85 So.3d 100 (alterations in original):

> This court discussed the exception of no right of action in *Way v. Andries,* 02–57, p. 2 (La.App. 3 Cir. 6/5/02), 819 So.2d 465, 467–68 as follows:
>
>> The purpose of an exception of no right of action is to test whether a plaintiff has a real and actual interest in the action. In *Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm'n,* 94–2015 (La.11/30/94), 646 So.2d 885, 888, the supreme court explained the exception as follows:
>>
>>> The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *Babineaux v. Pernie–Baily* [*Bailey*] *Drilling Co.,* 261 La. 1080, 262 So.2d 328 (1972). The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. [Footnote omitted.]
>>
>> The exception of no right of action addresses itself to whether the particular plaintiff falls, as a matter of law, within the general class of those to whom the law grants the cause of action being asserted in the suit. *Wonycott v. Wonycott,* 579 So.2d 506 (La.App. 4 Cir.1991), citing *Bielkiewicz v. Rudisill,* 201 So.2d 136 (La.App. 3 Cir.1967). This objection is a threshold device to terminate a suit brought by one who has no interest in judicially enforcing the right asserted. *Roger Boc, L.L.C. v. Weigel,* 99–570 (La.App. 3 Cir. 11/3/99), 744 So.2d 731; *Meche v. Arceneaux,* 460 So.2d 89 (La.App. 3 Cir.1984).

Accordingly, the main issue before us is whether Mr. Keys falls within the class of persons allowed to bring suit to recover damages based upon Marla's death. As noted in *Thomas v. Ardenwood Properties*, 10-26, p. 7 (La. App. 1 Cir. 6/11/10), 43 So.3d 213, 218, *writ denied,* 10-1629 (La. 10/8/10), 46 So.3d 1271, "the law clearly recognizes the right of a biological father to institute a wrongful death action on

2

behalf of his child born out of wedlock, provided he has complied with the procedural formalities that would allow him to bring such an action." Both *Udomeh* and *Thomas* concluded that those "procedural formalities" required that the putative father of a child born out of wedlock must first timely file an action for filiation before or at the time of bringing a wrongful death claim.

> Filiation is the legal relationship between a child and his parent. La. C.C. art. 178. Filiation is established by proof of maternity, paternity, or adoption. La. C.C. art. 179. In the case of proof of paternity, especially in the event that the child sought to be filiated is deceased, La. C.C. art. 198 provides, in pertinent part, that "[i]n all cases, the action [to establish paternity] shall be instituted no later than one year from the day of the death of the child." Moreover, the article expressly states that the time periods contained therein are peremptive.

*Thomas*, 43 So.3d at 216 (alterations in original).

Mr. Keys filed an original petition asserting his wrongful death claim on May 6, 2011, exactly one year following the death of his daughter. In the petition, he plainly declared that he was the "surviving biological father" of Marla. However, the suit was for damages only; missing from the petition was a request to be legally recognized as her natural father. Accordingly, under *Udomeh* and *Thomas*, he has failed to timely file any action for filiation. Moreover, because he did not file that action within one year of Marla's death, any filiation claim he had has been perempted.

Mr. Keys claims that the trial court should have allowed him to amend his pleadings to specifically set forth a claim for filiation and that the subsequent amendment would relate back to the timely filed wrongful death suit. However, "relation back of an amended or supplemental pleading . . . is not allowed to avoid the running of a peremptive period" as peremption "destroys the cause of action itself." *Naghi v. Brener*, 08-2527, p. 10 (La. 6/26/09), 17 So.3d 919, 925. Mr. Keys "can no longer establish filiation because the cause of action no longer exists." *Udomeh*, 75 So.3d 523 at 526. Because he failed to timely file an action for filiation, Mr. Keys is no longer "in the class of persons who are entitled to bring a wrongful death action,

3

and he is barred by peremption from curing that defect." *Id.* Accordingly, the trial court did not err in granting the DCFS' exception of no right of action.

For the above reasons, we hereby affirm the decision of the trial court. Costs of this appeal are assessed against Mr. Keys.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules-Courts of Appeal. Rule 2-16.3.