KLIEBERT, Judge.
This is an appeal by Mireya Ponce Ziifle, plaintiff and surviving spouse in community of the decedent, Frederick A. Ziifle, from a judgment which dismissed, on exceptions of no right or cause of action, her petition to annul and set aside two previous judgments of the trial court and her request, by separate petition, for a preliminary injunction against continued enforcement of the judgments. The first judgment sought to be annulled was a money judgment of $26,-625.00 which emanated from the surviving spouse’s failure to abide by a judgment, rendered on June 30, 1980, ordering her to render an accounting for community funds expended on her separate property and to deliver community property then in her possession to the executor in order for it to be partitioned by sale. On appeal, the surviving spouse assigns as error the trial judge’s (1) refusal to grant the preliminary injunction, (2) his sustaining the exception of no cause of action and no right of action, thereby dismissing the petition to annul the judgments, and (3) admission of evidence over the objection of the surviving spouse. For the reasons which follow, we reverse and remand.
To put the issues in proper perspective, it is necessary to review the setting in which they arose and how they arose.
The decedent died testate on April 22, 1978. Sixteen months prior to his death, decedent married the present plaintiff, who was twenty-six years his junior. There were two separations during the marriage. The first commenced in August, 1977 and terminated in December, 1977. The plaintiff and the decedent had been living separate and apart since February, 1978 and a separation suit was pending at the time of his death.
The entirety of the decedent’s estate was left to Vernon Ziifle, his brother, and Bertha Ziifle Towner, his sister. The brother was also qualified as the dative testamentary executor. The litigation between the surviving spouse and the executor and/or heirs commenced when she filed a petition claiming the marital fourth. On appeal, the Fourth Circuit upheld a judgment of the trial court, denying the plaintiff’s claims on the grounds she was not in necessitous cir *268 cumstances and, therefore, not entitled to the marital fourth.[1]
Thereafter, on January 18, 1980, the executor filed a petition against the surviving spouse entitled “Petition for Accounting and Partition” to have her account to the succession for community funds of $17,-000.00 alleged to have been used to pay a separate debt of the spouse and to account to the succession for various items (jewelry, auto, etc.) listed in the descriptive list as community property.
Attached to the petition was a rule for her to show cause why the community property (jewelry, auto, etc.) listed in the descriptive list should not be delivered to the executor for partition by sale. The petition and rule were personally served on the surviving spouse and initially set for hearing on February 5, 1980. After several reset-tings, it was set for hearing on April 1, 1980.
On that date, the surviving spouse filed a motion to traverse the descriptive list alleging, among others, that the items she was being requested to account for as community property were actually donated to her by the decedent and, hence, were her separate property.[2] As a result, the trial judge withheld his ruling as to the status of the property and gave the surviving spouse time to respond to the executor’s memorandum. On April 11,1980, the surviving spouse filed her responding memorandum and then, on April 15,1980, filed an answer to the executor’s Petition for Accounting and Partition. There was a certificate of service by the surviving spouse’s attorney certifying that a copy of the answer was sent to the executor’s attorney by mail.
On April 28, 1980, the trial judge rendered a judgment holding that four of the items[3] listed in the descriptive list were community property. On the same date, the executor moved for entry of preliminary default in the suit for accounting and partition despite the fact that an answer had been filed. Then, on June 30,1980, the default was confirmed and the surviving spouse ordered “to render an accounting of the community property and of the community funds expended on her separate estate.”
On August 11, 1980, after the surviving spouse failed to comply with the June 30, 1980 judgment, the executor filed a rule for a writ of distringas which was personally served on .the surviving spouse. Initially set for September 16, 1980, the rule was re-set for hearing on October 14,. 1980. While this rule was pending, the surviving spouse’s attorney, Mr. Lehmann, by order dated October 18, 1980, withdrew from his representation. On October 14, 1980, Mr. Arthur Dumaine filed, on behalf of the surviving spouse, a motion for continuance and the matter, was re-set for hearing on November 18, 1980. The surviving spouse testified as to some confusion, at least on her part, as to when the rule was originally set. Also, there is a conflict between the order setting the rule for November 18, 1980 and the minute entry of October 14, 1980 which shows the rule was continued without date.
Mr. Dumaine filed no other pleading and made no appearance at the November 18, 1980 hearing. After the hearing on November 18,1980, the trial judge ordered the issuance of the writ of distringas. This resulted in the Sheriff’s seizure of movable and immovable property belonging to the separate estate of the surviving spouse.
Notwithstanding the issuance of the writ of distringas, the surviving spouse did not comply with the June 30, 1980 judgment. Therefore, on February 11,1981, the executor filed a rule alleging the surviving spouse’s continued failure to comply with *269 the judgment. The trial judge appointed the Sheriff, under the provisions of La.C. C.P. Article 2004, to render on behalf of the surviving spouse the accounting called for by the June 30,1980 judgment and ordered the surviving spouse to show cause on March 31, 1981 why the judgment should not be made executory in the amount accounted for by the Sheriff. This rule was served on Mr. Arthur Dumaine, attorney.
The March 31, 1981 hearing was not attended by the surviving spouse or her attorney. The trial judge took the matter under advisement and on May 15th, 1981, based on an accounting rendered by the Sheriff, rendered a judgment of $26,625.00[4] in favor of the Succession and against the surviving spouse. To satisfy the money judgment, the executor, through the issuance of a writ of fieri facias had the Sheriff seize and sell at public auction the surviving spouse’s separate movable and immovable property. Notice of the seizure was made on Mr. Arthur Dumaine. On the first offering, no bids in excess of two-thirds of the appraised value of $95,000.00 were received. On the second offering, the property was purchased by the executor and his sister for $35,000.00.
On December 22, 1981, through Mr. Michael Mullins, an attorney, the surviving spouse filed a suit to annul the judgment of May 15, 1981 on the grounds it was obtained by ill practices as contemplated by La.C. C.P. Article 2004 and more particularly “due to the fact that no competent evidence was introduced at the hearing on May 31, 1981 to substantiate the particular items of damages claimed by the holder of the judgment” and to set aside the sale made on December 16, 1981.[5] Mr. Vernon Ziifle and Mrs. Bertha Ziifle Towner were made defendants. On December 29, 1981, Mr. Mullins filed a motion to withdraw as counsel for the surviving spouse and was permitted to do so by order dated January 18, 1982.
After declinatory and dilatory exceptions were filed, by the purchasers at the sale, present counsel, on January 12,1982, filed a motion to be recognized and was made attorney of record for the surviving spouse. On January 12, 1982, the original petition filed by Mr. Mullins was amended and supplemented to allege: (1) the seizure of the movables was unlawful, (2) the judgment of May 15,1981 was erroneous and rendered in an invalid proceeding, and (3) the judgment and seizure failed to give the surviving spouse notice and deprived her of her property without procedural and substantive due process of law, in violation of the State and Federal Constitutions. Alternatively, in the event the property sold could not be returned to the surviving spouse in kind, she sought to recover from Mrs. Bertha Ziifle Towner and Vernon Ziifle, individually and in his capacity as executor, $150,-000.00 as the value of the property as well as damages for an unlawful seizure and sale of the surviving spouse’s movable and immovable property.
Thereafter, on January 28, 1982, the executor obtained garnishment under fieri fa-cias, directed to the surviving spouse’s employer, in further execution of the May 15, 1981 judgment. Also, the executor filed exceptions of no cause of action and of no right of action to the petition for annulment, as amended. The exception of no cause of action was grounded in the contention that allegations in the original petition of incompetent evidence was not an ill practice as contemplated by La.C.C.P. Article 2004 and the two grounds for invalidity alleged in the supplemental petition are not the grounds for nullity specified in La.C. C.P. Article 2004. The exception of no right of action was grounded in the contention the Sheriff’s sale to the executor and *270 his sister may not be attacked or affected by an attack on the validity of the judgment upon which the sale was based.
In response to the garnishment, the surviving spouse filed a petition for a restraining order and for a preliminary injunction restraining the garnishment and any other further execution of the May 15,1981 judgment.[6] The trial judge[7] apparently refused to grant the restraining order but did set a hearing for a preliminary injunction for February 22, 1982.
The transcript of the February 22, 1982 hearing is sketchy and confusing. It indicates the surviving spouse was granted permission to amend her petition to allege the nullity of the judgment of June 30, 1980. The pleadings filed subsequent to the hearing are substantially broader but were also approved by the court. It is also apparent there was confusion between the attorneys and the court as to the nature of the hearing; i.e., whether it was a combined hearing for a preliminary injunction and arguments on the exceptions or a combined hearing on the preliminary injunction and the merits of the petition for annulment or merely a hearing on the preliminary injunction. At times the trial judge restricted admission of evidence as to the nullity because he considered the hearing was solely on the petition for a preliminary injunction with the annulment to be considered at some subsequent time. Nevertheless, at other times evidence bearing on the nullity was admitted over objections of counsel; i.e., correspondence between counsel for the executor and former counsel for the surviving spouse, and he went on to rule on the nullity actions.
After the hearing, on March 4, 1982, the surviving spouse filed in the record a second supplemental and amending petition to allege the judgment of May 15, 1981 was invalid because (1) it erroneously cast the surviving spouse in judgment for the entire $17,000.00 used to pay for the separate property rather than only one-half of same, and (2) it was obtained in a summary proceeding without citation and service on her and was based on the judgment of June 30, 1980 which was an absolute nullity because it was obtained by default notwithstanding the filing of an answer prior to the taking of the default. The petition further alleged that the May 15, 1981 judgment was never served on her and prayed for additional damages. The surviving spouse also amended her petition for injunctive relief to allege that the May 15, 1981 judgment was based on the default judgment of June 30, 1980 which was an absolute nullity and, therefore, the execution of the June 30, 1980 and of the May 15, 1981 judgments should be enjoined. On March 23,1983, the executor filed, against the latest amended petition to annul the judgment, an exception of no cause of action grounded in the contention that it failed to state a ground for nullity under either La.C.C.P. Article 2002 or Article 2004 which contain the sole grounds for nullity of a judgment and that she has no right to assert the invalidity of the June 30, 1980 judgment or the May 15, 1981 judgment because the surviving spouse acquiesced in the execution of the judgment of May 15,1981 and, hence, under La.C.C.P. Article 2003, cannot attack its validity.
On March 5,1982, based on the February 22, 1982 hearing, the trial judge rendered judgment denying the surviving spouse’s petition for a preliminary injunction and upheld the exceptions of no cause and no right of action, thereby dismissing the surviving spouse’s petition to annul the judgments of June 30,1980 and of May 15,1981. Written reasons for his judgments were filed in the record. The reasons for the judgment appear to go beyond the judgment and to cite reasons which would be applicable to a dismissal of the suit to annul the judgments after a trial on the merits. In those reasons, the trial judge found the default judgment of June 30,1980 was taken by default, notwithstanding the previous filing of an answer, but ruled it could not *271 be annulled because it was acquiesced in by the plaintiff. Additionally, he found that although the May 31, 1981 judgment was obtained in an originally erroneous summary manner after proper notice to the plaintiff, since no complaint had been raised as to the summary process it was now too late to complain.
We believe the trial court erred. The exception of no cause of action raises the question of whether the law affords any remedy to a plaintiff solely on the basis of the allegations of the petition. Morton v. Washington National Insurance Company, 420 So.2d 1019 (La.App. 5th Cir.1982). Evidence is not allowed to support or controvert the objection. LSA-C.C.P. art. 931.
The petition here was supplemented and amended twice. The allegation of nullity for reason of the answer being filed prior to default was included in both the second supplemental and amending petition and the petition for injunctive relief. Thus, the petitions did state a cause of action for nullity under La.C.C.P. Article 2002 (Vices of form).
An exception of no right of action, on the other hand, raises the question of whether plaintiff belongs to that particular class to which the law grants the remedy. Morton, supra. The evidence here is limited to the lack of interest of the plaintiff to institute the suit, i.e., whether plaintiff is a person in whose favor the law extends a cause of action for the particular relief sought. Budd Construction Company, Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3d Cir.1981); Babineaux v. Pernie-Bailey Drilling Co., 262 So.2d 328 (La.1972). Evidence which goes to a defense is prohibited. Babineaux, supra.
In this case, the trial judge apparently granted the exception of no right of action because the appellant prayed for items of recovery disallowed by law, i.e., annulment of a sheriff’s sale and placing her back into possession of same. After a judicial sale has been consummated, the only recovery is to the proceeds. Guaranty Savings Assur. Co. v. National American Bank, 407 So.2d 795 (La.App. 4th Cir.1981), writ denied. Whatever the merits of this objection, however, it is improper to grant an exception of no right of action for that reason since there is no doubt appellant was a member of the class entitled to bring an action for recovery of the proceeds. Furthermore, whenever the petition can be cured of defects, an amendment must be allowed by the court. LSA-C.C.P. art. 934.
For the aforementioned reasons, then it was error to grant either of the peremptory exceptions of no cause and/or no right of action.
On the next issue, i.e., whether the preliminary injunction was properly denied, two questions had to be considered: (1) whether there was irreparable injury; and (2) whether the mover presented a prima facie case.
LSA-C.C.P. art. 2298 provides specifically that injunctive relief shall issue under a writ of fieri facias (inter alia):
(4)When the judgment sought to be executed is absolutely null.
Thus, irreparable injury does not need to be shown where, as in this case, the allegations raised the issue of a null judgment. Therefore, appellant here needed only to present a prima facie case that the judgment under which the garnishment is sought is an absolute nullity to obtain the injunctive relief.
The evidence in this regard clearly reveals that the default judgment, which is the source of all further proceedings, was taken despite the fact that an answer had been filed prior to that date. The judgment is on its face a nullity subject to annulment at any time. LSA-C.C.P. art. 2002.
A prima facie case is defined by Black’s Law Dictionary as:
“At first sight, on the first appearance; on the face of it; ... a fact presumed to be true unless disproved by some evidence to the contrary.”
*272 The only contrary evidence introduced here focused on the question of acquiescence to the null judgment. Although this defense, if successful, could relieve defendant of liability, it is not clear all of the evidence bearing on the question is in the record, since the trial court at times restricted the evidence stating that the merits were not being litigated. Additionally, the plaintiff-appellant’s activities in this matter show no intent to acquiesce in that she went through four attorneys, apparently causing a great deal of confusion for all involved. In one instance in particular, a rule on the distringas was apparently set for October 14, 1980. Appellant changed attorneys in the meantime, and a new date for the hearing was set for that reason. However, although an order shows the new date was November 18, 1980, the minute entry for October 14, 1980 notes the case was continued without date. The surviving spouse testified that she made an appearance (she did not recall the date), but that no one else was present and her attorney informed her by telephone that the case was continued without date.
For the foregoing reasons, and in the further interest of justice, the preliminary injunction should have issued and the merits of the case tried at some time subsequent to February 22, 1980. Therefore, the judgment of the trial court is set aside and the case remanded to the trial court with instructions to issue the preliminary injunction and set the case for trial on the merits. All costs to be borne by the appellee.
REVERSED AND REMANDED.

. See In Re: Succession of Frederick A. Ziifle, 378 So.2d 500 (La.App. 4th Cir.1979).

. An order attached to the motion to traverse the descriptive list shows it was set for hearing on May 13, 1980. A minute entry indicates that the proceedings were continued without date on May 13, 1980. The record does not indicate whether the motion to traverse was ever tried.

.A yellow gold aquamarine and diamond cocktail ring; a gold cross with diamonds; a refrigerator, and a 1977 Ford Granada.

. The amount was determined by adding the $17,000.00 of community funds used to pay the mortgage on the surviving spouse’s separate property to one-half of the current value of the items determined by the April 28, 1980 judgment to be community property. The Sheriffs account was based on the value reflected by the descriptive list rather than current value.

. There is some indication a suit to enjoin the sale was also brought by Mr. Mullins on behalf of the surviving spouse but the same is not in the record before us.

. The prayer of the petition asks solely for a restraining order and a preliminary injunction. It does not ask for a permanent injunction.

. The former trial judge had been Judge Louis DeSonnier. At this point in time, Mr. Peter Feringa, Jr. was serving as judge ad hoc.