| FEDERAL WORK READY, INC. | * | NO. 2019-CA-0752 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| BARRY WRIGHT AND MILLICENT WRIGHT | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-12479, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Terri F. Love, Judge Regina Bartholomew-Woods,
Judge Tiffany G. Chase)


Don A. Rouzan
Dana Henry
DON A. ROUZAN & ASSOCIATES, LLC
1010 Common Street, Suite 2410
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT


Ike Spears
Diedre Pierce Kelly
SPEARS & SPEARS
909 Poydras Street, Suite 1825
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE

                    **AFFIRMED, IN PART, AND RENDERED**
                        **APRIL 22, 2020**

*RBW*

*TFL*

*TGC*

Appellant entered into a commercial lease with Appellees. During the term, the commercial lease was later amended to include an option to purchase. Appellant attempted to exercise its option to purchase, but neglected to follow-through by consummating the sale. Despite two favorable trial court rulings, Appellant still neglected to consummate the sale. After Appellant's sole shareholder was indicted, and later convicted, on federal charges, Appellant filed for bankruptcy and its corporate status was administratively terminated. Thereafter, Appellant purported to assign its rights in a judgment to a third-party. For the foregoing reasons, we find that Appellant has no cause of action, and the purported third-party assignee has no right of action.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the instant appeal, the parties have been before a different panel of this Court for consideration of a writ application pertaining to a partial summary judgment in favor of Plaintiff-Appellant, Federal Work Ready, Inc., the original Plaintiff to this action.[1] Because of the posture of the current litigation, we will summarize the entire factual and procedural background of this matter.

On November 14, 2011, Federal Work Ready[2] ("FWR") and Defendants-Appellees, Barry Wright and Millicent Wright ("Appellees"), entered into a three-year commercial lease for the commercial premises located at 3620 Chestnut Street in New Orleans, Louisiana, 70115. The purpose of the lease was for use as a "medical office and physical therapy or any other use that is permitted by law." The term of the lease was from December 5, 2011 through January 4, 2014. The lease agreement, provided, in pertinent part, the following section:

### SUBLEASING OR ASSIGNMENT

> Lessee shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Lessee's interest in this lease or in the premises, without Lessor's prior written consent, which Lessor shall not unreasonably withhold. Lessor shall respond to Lessee's request for consent hereunder in a timely manner and any attempted assignment, transfer, mortgage, encumbrance, or subletting without such consent shall be void and shall constitute a breach of this lease.

---

[1] *See Federal Work Ready, Inc. v. Wright,* 2015-1301 (La. App. 4 Cir. 5/18/2016), 193 So.3d 1217.

[2] FWR was a privately held Louisiana business corporation, with its principal office located at 3620 Chestnut Street New Orleans, Louisiana 70115. Mr. Jeffrey Rose, who resided in Missouri, Texas, served as the president and the sole officer of FWR.

Any such sublease shall contain all the provisions of this lease to the extent applicable and provided further Lessee shall not be relieved by any such subleasing or assignment of Lessee's obligation to pay rent herein stipulated or any other obligations of Lessee under this lease. Any such subleasing or assignment shall be handled by Real Estate Consortium and Lessee shall pay any related fees required for such handling, a commission as set forth in the commission paragraph which follows.

Approximately, one year later, On December 5, 2012, FWR and Appellees executed a "First Amendment of Lease of Commercial Property." The amendment provided, *inter alia,* three important alterations to the original lease: (1) it clarified the termination date of the original term from January 4, 2014 to January 4, 2015; (2) it added an additional lessee, an affiliate company of FWR, identified as "Injured Workers Network, Inc.,"; and (3) it incorporated an "Option to Purchase" provision into the lease agreement. The Option to Purchase recited the following:

The Parties hereby expressly acknowledge and agree that Lessee or Additional Lessee shall have a two-year option to purchase the Leased Premises (the "Purchase Option") for a purchase price of Three Hundred and [sic]Twenty Thousand Dollars and NO/100 Cents [sic] ($320,000.00 U.S.) (the "Purchase Price"), which Purchase Option exercise period shall commence on January 1, 2013, and terminate on December 31, 2014 (the "Option Period"). In consideration for the Purchase Option, Lessee or Additional Lessee or their designee shall pay to Lessor or Lessor's designee(s) upon execution of this Agreement a sum of One Hundred Thousand Dollars and NO/100 Cents [sic] ($100,000.00 U.S.) in certified United States funds (the "Option Price"), which Option Price shall also count as pre-paid rent under the Lease for the next 24 months through to December 31, 2014, the end of the Option Period. Should Lessee or Additional Lessee fail to exercise the Purchase Option timely during the Option Period, then the obligation to resume payment of the monthly rental amount pursuant to the terms of the Lease shall arise effective as of the first month after the Option Period has ended.

3

> Lessee or Additional Lessee may exercise the Purchase Option at any time during the Option Period by written notice to Lessor in accordance with the process outlined under the heading "NOTICES" in the Lease.[3] Lessee or Additional Lessee shall be obligated to consummate the purchase of the Leased Premises within sixty (60) days after delivery of its written notice to Lessor to exercise the Purchase Option or else Lessor's obligation to honor such Purchase Option shall thereafter be null and void.

In accordance with the Purchase Option, "on November 14, 2014, [FWR], through counsel, provided [Appellees] with written notification of its intent to exercise the purchase option" and "a closing date of December 22, 2014." *Federal Work Ready, Inc.,* 2015-1301, p. 5, 193 So.3d at 1221. The aforesaid "letter was sent, via certified mail, but was not claimed by [Appellees] and ultimately returned to sender." *Id.* "Thereafter, [FWR] had a private process server hand deliver the November 14, 2014 letter to [Mr.] Barry Wright." *Id.* After Appellees did not respond to the letter, FWR sent another letter to Appellees on December 18, 2014, via certified mail and on December 19, 2014, via regular Untied States Postal Service mail. *Id.* Both letters indicated FWR's desire to exercise the purchase option. *Id.* The "second certified mail letter was returned as unclaimed." *Id.*

As a result of the aforementioned, on December 30, 2014, FWR filed a "Petition for Specific Performance, Damages, Declaratory Judgment and Injunctive Relief." *Id.* at 1219. Once Appellees filed their Answer to the Petition, FWR filed a motion for summary judgment. *Id.* On October 16, 2015, the trial

---

[3] The notice provision of the lease provided, *inter alia,* that "[a]ny notice or other communication required or permitted to be given, under this lease by Lessee to Lessor shall be in writing and shall be delivered in person or sent by United States Certified or Registered Mail, postage prepaid, return receipt requested, and addressed to Lessor at the place where rent is required to be paid hereunder."

court conducted a hearing on the motion for summary judgment. On October 29, 2015, the trial court granted partial summary judgment, and stated "Federal Work Ready, Inc.[,] is entitled to a Judicial Declaration that Federal Work Ready, Inc.[,] properly exercised a valid Option to Purchase property from Defendants." Appellees sought appellate review of the trial court's judgment. On May 18, 2016, a different panel of this Court affirmed the trial court's ruling. *See Federal Work Ready, Inc. v. Wright,* 2015-1301 (La. App. 4 Cir. 5/18/2016), 193 So.3d 1217.

On June 30, 2015, FWR's sole shareholder, Mr. Jeffery Rose, was indicted in a twenty-five (25) count federal indictment that included felony counts of "conspiracy to commit health care fraud and wire fraud, health care fraud aiding and abetting, conspiracy to launder and engage in monetary transactions in criminally derived property and engage in a monetary transaction in criminally derived property."

During the fall of 2015, FWR filed for Bankruptcy in the United States Bankruptcy Court, Southern District of Texas—Houston Division.[4] On June 27, 2016, pursuant to La. R.S. 12:1-1442, the Louisiana Secretary of State administratively terminated FWR's status as a corporation. Approximately two (2) months later on August 5, 2016, pursuant to Section 171.309 of the Texas Tax Code, the Texas Secretary of State forfeited the charter, certificate, and/or

---

[4]Appellees' aver that, pursuant to the default paragraph of the original lease agreement, FWR's filing of bankruptcy provided grounds for the immediate cancellation of the lease. However, the lease had already expired on January 4, 2015, which was prior to FWR's filing for bankruptcy.

registration of the additional lessee and affiliate company of FWR—Injured Workers Network, Inc.

Despite having its corporation administratively terminated in Louisiana, FWR continued to prosecute and pursue legal claims in the instant matter. On January 13, 2017, it filed a second motion for summary judgment seeking specific performance. On March 31, 2017, a hearing on the motion took place. On May 16, 2017, the trial court rendered judgment granting summary judgment in favor of FWR, which mandated that Appellees "sell the property located at 3620 Chestnut Street, New Orleans, Louisiana 70115 to Plaintiff, Federal Work Ready, Inc., for the agreed price of $320,000."

On June 1, 2018, which was one year and one month after the trial court ordered specific performance, Mr. Jeffrey Rose was sentenced on the aforementioned twenty-five (25) count federal indictment to nineteen and one-half (19½) years in federal prison and ordered to pay approximately 14.5 million dollars as restitution to the United States Department of Labor—Office of Worker's Compensation Program.

One month later, on July 18, 2018, FWR through Ely Edwards Enterprises, Inc., ("EEE") as the purported assignee of FWR, filed the following pleading: "Plaintiff Federal Work Ready, Inc.'s Motion to Enforce Execution of the Court's Judgment Granting Specific Performance."[5]   Counsel for FWR, now counsel for

---

[5] A footnote within the pleading references "Exhibit B," an assignment of judgment, dated June 8, 2018, by FWR's Bankruptcy Trustee executed in favor of EEE, which recited, in pertinent part, the following: "for and in consideration of the sum of…$25,000," which purported to "bargain, sell, transfer, and assign" "the judgment entered as a result of litigation in New Orleans, Louisiana (Case No. 14-12479)(Civil District Court for the Parish of Orleans—Division

6

EEE, requested specific performance on the judgment that had been previously granted by the trial court one year earlier on May 16, 2017. On August 24, 2018, the trial court conducted a hearing in the matter and issued a judgment dated September 26, 2018, denying the motion.[6] Appellant sought this Court's supervisory review; however, on March 19, 2018, this Court denied Appellant's writ application.[7]

Subsequently, one year after the supervisory writ was denied, on March 13, 2019, FWR through EEE as purported assignee, filed a second motion to enforce execution of the trial court's judgment granting specific performance. It should be noted that the "second motion" filed in the same district court, was substantively similar to the first motion filed and the transcripts reveal that the same arguments were pursued during both hearings. The trial court conducted a hearing on the "second motion" on May 24, 2019, and issued a judgment on June 10, 2019, denying said motion.[8] It is from this judgment that FWR through EEE as assignee now appeals.[9]

---

'D').'" "Th[e] assignment of the Judgment includes, but is not limited to, all relief, claims, causes of actions, damages, rights, and/or privileges granted by and/or made available via the Judgment."

[6] Following Judge Jupiter's passing, Judge Melvin Zeno (retired) sat *Pro Tempore*.

[7] In *Federal Work Ready, Inc. v. Barry Wright,* 2018-C-0910, a three-judge panel of this Court found that FWR's writ application was filed in violation of Uniform Rule 4-5(C)(8) and (9), as well as Rule 4-5(A); therefore, the writ was procedurally denied without the merits being considered.

[8] Judge Ellen Hazeur presided.

[9] Counsel for FWR states in the caption under the signature block: "Attorneys for Plaintiffs—Appellants Federal Work Ready, Inc.[,] though its properly appointed assignee, Ely Edwards Enterprises, Inc."

7

## DISCUSSION

### *Assignment of Errors*

FWR through its alleged assignee EEE assigns the following two (2) errors:

(1) The trial court committed an error of law by refusing to enforce a valid final judgment based on a 60-day time limit not found in the actual judgment and contrary to La. CCP art. 3499.

(2) The trial court committed an error of law when it ruled that the contractual limits to the assignment of a lease that terminated in 2014 could limit the right to assign a judgment for specific performance to sell property issued by a court of competent jurisdiction in 2017.

### *Analysis*

Before we can begin to delve into the substance of Appellants' assignments of error, there are several procedural issues that must be addressed. We will address each in turn.

### *No Right of Action*

Based on the protracted factual and procedural history of the parties regarding the present litigation, we will first examine whether FWR and EEE each, independently, have a right of action to prosecute the instant appeal, as well as the underlying litigation.

A peremptory exception of no right of action may be noticed by the appellate court *sua sponte* where the record supports such an action. *Moreno v. Entergy Corporation,* 2010-2268, p. 3 (La. 2/18/11), 64 So.3d 761, 762; La. C.C.P.

art. 927. "The exception of no right of action questions whether the particular plaintiff has standing to bring the lawsuit." *Downtown Development District v. City of New Orleans,* 2018-0726, p. 6 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, 924, *writ denied*, 2019-00947 (La. 9/24/19), 279 So.3d 388, and *writ denied*, 2019-00942 (La. 9/24/19), 279 So.3d 937. "The exception is appropriate when the plaintiff does not have . . . [the] legal capacity to proceed with suit in a particular case." *Gorum v. Louisiana Hospital Association Employee Benefit Trust,* 1995-468, pp. 3-4 (La. App. 3 Cir. 11/2/95), 664 So.2d 662, 664, citing *Moyers v. Altmann,* 594 So.2d 6 (La. App. 3 Cir. 1992). "The main function of a peremptory exception of no right of action is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff." *Gorum*, 1995-468, p. 4, 664 So. 2d at 664.

### *FWR*

In Louisiana, pursuant to La. C.C. art. 24, there are two kinds of persons who are authorized to engage in civil actions; one of those recognized is a juridical person. "A juridical person is an entity to which the law attributes personality, such as a corporation . . . [t]he personality of a juridical person is distinct from that of its members." La. C.C. art. 24. A domestic corporation has the procedural capacity to sue to enforce its rights in the corporate or company name. La. C.C.P. art. 690. When the instant matter was initially filed in November 2011, FWR was unquestionably a juridical person—it was a valid Louisiana corporation. As such,

it had full legal powers to sue to enforce its rights under the lease agreement at issue herein.

However, on June 27, 2016, during the course of this litigation, FWR's corporate charter was administratively terminated by the Louisiana Secretary of State. The aforesaid termination was accomplished in accordance with La. R.S. 12:1-1442,[10] entitled "Administrative termination," which recites the following:

A. Subject to Subsection B of this Section, the secretary of state shall terminate the existence of a corporation if, according to the records of the secretary of state, the corporation has failed for ninety consecutive days to do either of the following:

(1) Comply with the requirements imposed by R.S. 12:1-501 concerning the continuous maintenance in this state of a registered office and registered agent.

(2) To file an annual report as required by R.S. 12:1-1621.

B. The secretary of state shall give the corporation at least thirty days' written notice of the secretary's intention to terminate the corporation's existence under Subsection A of this Section. If the corporation eliminates the grounds for its termination before the end of the thirty-day notice period, the secretary of state shall not terminate the existence of the corporation.

C. The secretary of state terminates the existence of a corporation under this Section by filing a certificate of termination that states the grounds for termination. The secretary shall serve a copy of the certificate of

---

[10] By Acts 2014, No. 328 § 1, the Louisiana Legislature enacted La. R.S. 12:1-101 to 12:1-1704 to comprise Chapter 1 of the Business Corporation Act of Title 12 of the Louisiana Revised Statues, effective on January 1, 2015, and at the same time, by Acts 2014, No. 328 § 5, the Louisiana Legislature repeated former Chapter 1 of the Business Corporation Law, consisting of La. R.S. 12:1 to 12:178 and La. R.S. 12:1605 to 12:1607. Thus, corporations dissolved prior to January 1, 2015, are bound by the former (now repealed) statutes; but corporations, like FWR, that dissolved (or were administratively terminated) on or after January 1, 2015, are bound by the current laws.

termination on the corporation in accordance with R.S. 12:1-504.

Based on the aforementioned, in the instant case, there is no doubt that FWR, as a corporation, ceased to exist as of June 27, 2016. However, the question remains as to what effect, if any, did the administrative termination have on the current underlying litigation. We turn to La. R.S. 12:1-1443, entitled "Effective date and effects of termination," which provides, in pertinent part, the following:

A. The filing by the secretary of state of a corporation's articles of termination under R.S. 12:1-1440 or 1-1441 or a certificate of termination under R.S. 12:1-1442 causes the existence of the corporation to terminate on the effective date of the articles or certificate of termination. The effects of the filing of the articles or certificate of termination are not affected by any error in the articles or certificate, but the error may justify reinstatement of the corporation as provided in R.S. 12:1-1444 or the appointment of a liquidator as provided in R.S. 12:1-1445.

B. When the existence of the corporation terminates, the corporation's juridical personality ends *except* for purposes of any of the following:
…
(2)Concluding any proceeding to which the corporation is a party at the time of the termination.
…

C. The termination does not do any of the following:
…
(2)Abate any proceeding to which the corporation is a party.
…

D. A terminated corporation's juridical personality, and the authority of a person acting on the corporation's behalf as its legal counsel or managerial representative, continues for purposes of Paragraph (B)(2) of this Section as if the termination had not occurred, but subject to the power of an authorized representative of a reinstated corporation, or of a liquidator appointed in accordance with R.S. 12:1-1445, to change the identity or authority of the legal counsel or managerial representative. [Emphasis supplied].

We find that, notwithstanding FWR's current corporate status as terminated, it maintains a right of action to continue prosecuting the instant matter for the reasons that follow. First, FWR's corporate status ceased to exist after January 1, 2015, the effective date of the above-referenced article. Second, the instant lawsuit began in November 2011 and continues until present day; accordingly, despite the fact that FWR's corporate status was terminated, said termination occurred during the pendency of the current litigation. Third, in accordance with the pertinent provision of the statute, FWR has been consistently represented by the same legal counsel, who has authority to act on its behalf. Thus, FWR has a right of action in this appeal/lawsuit.

*EEE*

Whether EEE has a right of action to pursue the current appeal is more complicated. First, EEE is purportedly an assignee of FWR, made such due to FWR's bankrupt status and through FWR's bankruptcy trustee. As such, legal counsel for FWR referred to EEE as "assignee" before both the trial court and before this Court when it filed its brief.[11] Our analysis with regard to EEE's standing is two-fold: (1) whether the assignment is a valid foreign judgment that meets the statutory requirements for full faith and credit recognition by Louisiana courts and (2) whether, generally, the assignment is valid pursuant to jurisprudential and statutory laws.

---

[11] Despite the references to EEE as an assignee, there was never an amendment to the pleadings to add EEE as a party plaintiff in the instant matter.

In the present case, FWR and Appellees attach to their pleadings both before the trial court and this Court, *inter alia*, a document entitled, "Assignment of Judgment." This document was executed in the State of Texas, County of Harris under authentic act by Ronald J. Sommers, Chapter 7 Trustee. In order to analyze whether full faith and credit should apply to the "foreign" Assignment, we first turn to La. C.C.P. art. 2541, which states:

> A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state…may bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.
>
> B. A duly authenticated copy of the judgment or decree must be annexed to the petition.
>
> C. A judgment, decree or order of the United States or any other court that is entitled to full faith and credit in this state may also be enforced pursuant to R.S. 13:4241.[12]

Because the underlying Assignment was issued by a Federal Bankruptcy Trustee, La. C.C.P. art. 2541, in particular section C, must be read, *in para materia*, with 28 USCA § 1738, which provides:

> The records and judicial proceedings of any court of any…State, Territory or Possession [of the United States], or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

---

[12] La. R.S. 13:4241 states "[i]n this Part 'foreign judgment' means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state."

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court in the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

In applying the aforementioned to the Assignment at issue herein, we find that it does not meet the requirements of neither state nor federal statutory law justifying that it be given full faith and credit. First, it does not contain an attestation by the clerk of Bankruptcy Court for the State of Texas, County of Harris. Second, there is no seal from the clerk of Bankruptcy Court. Third, there is no certificate from the judge of the Bankruptcy Court stating that the attestation is in proper form. Accordingly, because it fails to comply with the aforesaid requirements, we cannot and do not recognize it as a valid foreign judgment.

Because we do not find that the Assignment by the Bankruptcy Trustee is a valid foreign judgment, we do not need to analyze the Assignment substantively. Further, based on our analysis herein-above, we find that EEE lacks a right of action to pursue the underlying lawsuit and this appeal—there is no recognized procedural vehicle authorizing EEE to participate in this litigation as a proper party.

### *No Cause of Action*

Despite the fact that FWR has a right of action in the underlying matter, we find that it has no cause of action to pursue the underlying claims of the instant lawsuit because it is bankrupt and cannot afford to purchase the property, which is the crux of the lawsuit.

The Louisiana Supreme Court explained that "an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition*." Badeaux v. Sw. Computer Bureau, Inc.*, 2005-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217 (In *Badeaux*, plaintiffs established a right of action, but failed to state a cause of action). Just like an exception of no right of action, an appellate court "may raise the peremptory exception of no cause of action *sua sponte." Landis Const. Co., LLC v. Reg'l Transit Auth.*, 2015-0854, p. 11 (La. App. 4 Cir. 5/25/16), 195 So.3d 598, 605; La. C.C.P. art. 927(B).

At the May 24, 2019 hearing, the following colloquy took place between FWR's counsel and the court:

> The Court: Is Federal Work Ready even capable of purchasing the property at this time? Aren't they bankrupt?
>
> Mr. Rouzan: Federal Work Ready is not. But they have sold—and that sale was approved—the judgments that were rendered in their favor to Ely Edwards Enterprises, Inc., which has been—is now and has been for time prepared to move forward with the sale. There has been no delay.

In *Cichirillo v. Avondale Indus., Inc.*, in response to questions posed by the court at a hearing on an exception of prescription, plaintiff's counsel admitted, in essence, that the claim had prescribed. 2004-2894, p. 8 (La. 11/29/05), 917 So.2d 424, 430. The Louisiana Supreme Court found plaintiff's counsel's statement to be a judicial confession. *Id*. Further, the Louisiana Supreme Court explained that "[a] judicial

15

confession is a declaration made by a party in a judicial proceeding.[13] It constitutes full proof against the party who made it, is indivisible, and may be revoked only on the ground of error of fact. La. C.C. art. 1853. A judicial confession is a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission—of withdrawing the subject matter of the confession from issue." *Id*. at 428-29 (internal citations omitted).

In the instant case, as evinced/evidenced above, FWR's counsel admitted that FWR was bankrupt and incapable of purchasing the property underlying the present lawsuit. FWR's counsel's admission served as a judicial confession, which supports this Court's finding that FWR has no valid cause of action to pursue.

### *Law of the Case Doctrine*

Even if we were to find a valid cause of action that FWR could pursue, which we do not, we moreover find that the law of the case doctrine is applicable herein. In the present case, FWR/EEE on July 18, 2018, filed a pleading entitled, "Plaintiff Federal Work Ready, Inc.'s, Motion to Enforce Execution of the Court's Judgment Granting Specific Performance." After it was denied by the trial court, and supervisory relief was denied by this Court, one year later, Appellants filed a substantively similar motion before the trial court. When that too was denied, it sought the instant appeal before this Court.

---

[13] The Louisiana Supreme Court explained that "[a] declaration made by a party's attorney or mandatary has the same effect as one made by the party himself.*" C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 2003-1003, p. 5 (La. 12/3/03), 861 So.2d 156, 159; La. C.C. art. 1853, cmt. (b).

Based on our jurisprudential rules, we now examine whether the first denied

motion, which was substantively similar to the second denied motion, constituted

"law of the case" so as to prevent consideration of the instant appeal.

This Court has fully explained the law of the case doctrine as follows:

> The law of the case doctrine refers to '(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.' *Petition of Sewerage and Water Bd. of New Orleans,* 278 So.2d 81, 83 (La. 1973); *Louisiana Land and Exploration Co. v. Verdin,* 95-2579, pp.3-4 (La. App. 1 Cir. 9/27/96), 681 So.2d 63, 65. This doctrine 'may bar redetermination of a question of law or a mixed question of law and fact during the course of a judicial proceeding.' 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). Thus, the law of the case doctrine is the proper procedural principle, as opposed to *res judicata*, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case. *Posey v. Smith*, 453 So.2d 1016 (La. App. 3 Cir. 1984). The policy reasons behind this doctrine include: (i) avoiding relitigation of the same issue, (ii) promoting consistency of results in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Day v. Campbell—Grosjean Roofing & Sheet Metal Corp.,* 260 La. 325, 330, 256 So.2d 105, 107 (1971).

> Unlike the statutory doctrine of *res judicata*, the jurisprudential doctrine of law of the case is a discretionary guide that will not be applied inflexibly. 'Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.' *Petition of Sewerage and Water Bd.,* 278 So.2d at 83. In addition to the latter exception for palpable error, the jurisprudence has recognized two other contexts in which this discretionary doctrine will not be applied. First, it will not be applied to 'supplant the Code of Civil Procedure provision which

17

> clearly permits a reconsideration of the overruling of peremptory exceptions.' *Babineaux v. Pernie—Bailey Drilling Co.,* 261 La. 1080, 1094, 262 So.2d 328, 332-33; *Landry v. Blaise, Inc.,* 2002-0822 (La. App. 4 Cir. 10/23/02), 829 So.2d 661, 666. Second, it will not be applied when the underlying operative facts upon which the court's prior decision was based have changed. *Morrison v. C.A. Guidry Produce,* 2003-0307 (La. App. 3 Cir. 10/01/02), 856 So.2d 1222-1226-27.

*Bank One, National Association v. Velten*, 2004-2001, pp. 6-7 (La. App. 4 Cir. 8/17/05), 917 So.2d 454, 458-59.

The present appeal presents us with the quintessential factual and procedural scenario for applying the law of the case doctrine. When FWR appeared before the trial court on August 24, 2018, and then again on May 24, 2019, it relitigated the same issue twice. The only difference between the two hearings was the trial judge. On August 24, 2018, a retired judge presided *pro tempore*. On May 24, 2019, Judge Ellen Hazeur presided. The underlying motions were the same, the lawyers were the same, the parties were the same, and the arguments were the same. There was absolutely no difference between the hearings. FWR simply went to court twice on the same issue, hoping it would receive a different result. The purpose of the law of the case is to prevent parties from doing exactly what FWR did in this matter.

The only exception to the doctrine is if palpable error was committed by the trial court. Palpable error is one that is "easily perceptible, plain, obvious and readily noticeable." *Black's Law* Dictionary (6th ed. 1995). For the foregoing reasons, we cannot say that the trial court committed such error during the August 24, 2018 hearing and in issuing the ensuing judgment.

Pursuant to La. C.C. art. 2668, a "[l]ease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." It is uncontroverted that Appellant and Appellees entered into a lease for commercial property on November 14, 2011, and a first amendment to said lease on December 5, 2012. Included in the first amendment to the lease was an option to purchase, which stated:

> The Parties hereby expressly acknowledge and agree that Lessee or Additional Lessee shall have a two-year option to purchase the Leased Premises (the "Purchase Option") for a purchase price of Three Hundred and Twenty Thousand Dollars and NO/100 Cents ($320,000.00 U.S.) (the "Purchase Price"), which Purchase Option exercise period shall commence on January 1, 2013, and terminate on December 31.2014 (the "Option Period"). In consideration for the Purchase Option, Lessee or Additional Lessee or their designee shall pay to Lessor or Lessor's designee(s) upon execution of this Amendment a sum of One Hundred Thousand Dollars and NO/l00 Cents ($100,000.00 U.S.) in certified United States funds (the "Option Price"), which Option Price shall also count as pre-paid rent under the Lease for the next 24 months through to December 31.2014, the end of the Option Period. Should Lessee or Additional Lessee fail to exercise the Purchase Option timely during the Option Period, then the obligation to resume payment of the monthly rental amount pursuant to the terms of the Lease shall arise effective as of the first month after the Option Period has ended.

> Lessee or Additional Lessee may exercise the Purchase Option at any time during the Option Period by written notice to Lessor in accordance with the process outlined under the heading "NOTICES" in the Lease. Lessee or Additional Lessee shall be obligated to consummate the purchase of the Leased Premises within sixty (60) days after delivery of its written notice to Lessor to exercise the Purchase Option or else Lessor's obligation to honor such Purchase Option shall thereafter be null and void.

19

Just as a lease is contract, so too is an option to purchase. Pursuant to La. C.C. art. 2620, in pertinent part, "[a]n option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time." Accordingly, La. C.C. art. 1983 provides, in pertinent part, that "contracts have the effect of law for the parties . . ." Moreover, as provided by La. C.C. art. 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Because the lease and option to purchase form a contract and the provisions of both the lease and option to purchase are clear and unambiguous, the lease and option to purchase govern the dispute between FWR and Appellees.

FWR argues that the trial court erroneously applied the sixty (60) day period from written notice of exercise to consummation of purchase to the enforcement of the trial court's May 16, 2017 judgment for specific performance. FWR argues that the May 16, 2017 judgment did not include a time frame for the execution of the judgment. FWR also argued that because the trial court rendered judgment against Appellees, it was incumbent upon Appellees to take action. We find that this argument lacks merit.

At the August 24, 2018 hearing, the trial court reasoned:

> You did not move forward to execute upon the rights that The [sic] Court gave to you [on May 16, 2017]. In the interim, that lease and the terms that were contained therein expired, and now you're seeking relief on—and then the bankruptcy court gets involved in all of that. And it appears now that we're seeking relief where we don't have a right. You certainly had it when you

> request[ed] it, but you were required to move forward on
> it and not go and put your feet up.

When relief was denied to FWR during the August 24, 2018 hearing, it was already bankrupt, had purportedly sold its interest in the instant lawsuit, had no way of purchasing the property at issue, and therefore had no valid cause of action to pursue. Thus, just like at the subsequent hearing and presently, based upon the reasoning stated herein-above, we find that the trial court rightly denied relief to FWR. FWR has no valid cause of action to pursue. Therefore, there was no palpable error committed and the law of the case doctrine applies, which barred FWR from relitigating the same issues, before the same court, albeit a different judge.

Because we do not find that FWR has a valid cause of action and that EEE has no right of action, we pretermit discussion of the merits of the assignments of error raised herein.

## CONCLUSION

For the foregoing reasons, we deny the relief sought and dismiss the claims of Federal Work Ready, Inc., and Ely Edwards Enterprises, Inc.

**AFFIRMED, IN PART AND RENDERED**

21