CHAISSON, J.
In this medical malpractice claim, plaintiffs appeal a judgment of the trial court that sustained defendants' exception of prescription. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On January 2, 2014, pursuant to the provisions of La. R.S. 40:1299.41 et seq. , Meagan Boudoin[1] and Sherie Boudoin *1228 filed a Petition for Medical Review Panel with the Division of Administration, alleging damages as the result of various acts of medical negligence by defendants. In the petition, Meagan Boudoin brought a claim for medical malpractice for injuries that she sustained as a result of alleged negligent medical treatment that she received as a patient of defendants.[2] Also in the petition, Meagan's mother, Sherie Boudoin, brought a wrongful death claim against defendants based upon the same alleged acts of medical negligence. The petition alleges that the medical negligence occurred during surgeries that Meagan underwent on January 5 and 6, 2011, which ultimately resulted in her death on January 6, 2011. The petition further alleges that Sherie Boudoin did not become aware that Meagan's death was the result of the surgical procedures and anesthesia until February 4, 2013.
In response to the Boudoins' petition, on August 6, 2014, defendants filed a Petition to Allot A Case Number and a Peremptory Exception of Prescription in the 24th Judicial District Court. This initial exception of prescription, which was filed based upon the facts as alleged in the Boudoins' petition, was overruled by the trial court. Subsequently, defendants took the deposition of Sherie Boudoin and thereafter filed a second exception of prescription relying upon the responses of Ms. Boudoin in her deposition. On February 13, 2017, the trial court sustained defendants' second exception of prescription. The Boudoins now appeal that judgment, arguing that it was error for the trial court to consider defendants' second exception of prescription when no new evidence was presented on the second exception, and further that the trial court erred in its application of the substantive law of prescription in sustaining the exception.
DISCUSSION
The Boudoins, contending that defendants have presented no new evidence in support of their re-urged exception of prescription, argue that the law of the case doctrine precludes the trial court from considering the re-urged exception.
La. C.C.P. art. 928(B) provides:
The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision and may be filed with the declinatory exception or with the dilatory exception, or both.
La. C.C.P. art. 1152 provides, in pertinent part:
A defendant may amend his peremptory exception at any time and without leave of court, so as to either amplify an objection set forth or attempted to be set forth in the original exception, or to plead an objection not set forth therein.
In analyzing our jurisprudential application of the "law of the case" doctrine in light of these articles, this Court, in Lomont v. Myer-Bennett , 16-436 (La. App. 5 Cir. 12/14/16), 210 So.3d 435, 444, has previously stated:
The Louisiana Supreme Court has interpreted these articles to allow for the re-urging of a previously overruled peremptory exception under certain circumstances. It is apparent that interlocutory orders overruling this and similar peremptory *1229 exceptions cannot be binding upon the trial court when it timely-but later-determines error of judgment based upon the matter as submitted or upon subsequent disclosures in the record which require a contrary holding. Art. 928, C.C.P., Comment (c). In following this rule, appellate courts have recognized the right of a defendant to re-urge a peremptory exception, even after it has previously been overruled by an appellate decision. The ability of a defendant to re-urge a previously overruled peremptory exception is, however, not unrestricted, but rather is limited by the discretionary "law of the case" doctrine. (citations omitted)
The law of the case doctrine embodies the rule that an appellate court will not reconsider its own rulings of law in the same case. Herrera v. Gallegos , 14-935 (La. App. 5 10/28/15), 178 So.3d 164, 168. "[T]he 'law of the case' rule is merely a court practice usually applied at the appellate court level in regard to parties who have had the identical issue presented and decided previously by that appellate court in an earlier appellate proceeding in the same case." Babineaux v. Pernie-Bailey Drilling Co. , 261 La. 1080, 262 So.2d 328, 332 (1972). In this matter, there is no indication that either party sought appellate review of the trial court's denial of defendants' first exception of prescription.
"When the law of the case is applied to certain trial court rulings, it is for that court a discretionary guide. The law of the case rule cannot supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions." Id. at 332-33. (citations omitted) This Court has specifically held that a party may re-urge a peremptory exception of prescription after the exception has initially been denied by the trial court. Herrera , 178 So.3d at 167. While our law does not countenance the re-urging of a previously denied exception where no new evidence or argument is presented for the trial court's consideration, our law clearly contemplates the right of a party to re-urge a peremptory exception where new evidence and/or argument is presented for the trial court's consideration. See Lomont , 210 So.3d at 444. In the case before us, in support of their re-urged exception of prescription, defendants presented the relevant deposition testimony of Sherie Boudoin, which was obtained subsequent to the trial court's ruling on the initial exception. Nothing precluded the trial court from considering the re-urged exception and the new evidence submitted in support of it, and we find no abuse of the trial court's discretion in considering the re-urged exception. This assignment of error is without merit.
We next address the Boudoins' argument that the trial court erred in sustaining defendants' re-urged exception of prescription on the merits.
Prescription on a claim of medical malpractice is governed by La. R.S. 9:5628(A), which provides, in pertinent part, that a medical malpractice claim must be brought "... within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect."
Under this statute, prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correa , 01-2707 (La. 6/21/02), 828 So.2d 502, 510. A prescriptive period will begin to run even *1230 if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Id. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Id. at 510-11. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Id. at 511. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. Id.
Ordinarily, the party urging prescription bears the burden of proof at the trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show that the action has not prescribed. Palazola v. IMC Consulting Eng'rs, Inc. , 16-22 (La. App. 5 Cir. 6/30/16), 197 So.3d 782, 784. On the trial of a peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. Herrera v. Gallegos , 13-204 (La. App. 5 Cir. 10/9/13), 128 So.3d 306, 309. When evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. Id.
In the case before us, because the Boudoin's petition was filed more than a year after the date of the alleged malpractice, it is prescribed on its face and the burden is on the Boudoins to show that it is not prescribed. On the trial of defendants' re-urged exception of prescription, defendants submitted excerpts of the deposition testimony of Sherie Boudoin, in which she stated that shortly after Meagan's death, Meagan's father said "something was done wrong here, we need to figure out what happened." Sherie Boudoin further stated that approximately two months after Meagan's death, she was discussing Meagan's death with her own personal physician, Dr. Garcia. She testified that when she told Dr. Garcia that her understanding was that Meagan experienced a change in blood pressure during the surgical procedure and that it appeared she had a stroke, Dr. Garcia responded that she has "people walking around with that blood pressure every day." Sherie Boudoin then stated that "when Dr. Garcia first said what she said to me, of course a flag kind of went off."
This testimony appears to directly contradict the allegation in the petition that Sherie Boudoin had no knowledge of potential malpractice until February 4, 2013. When she was asked in her deposition about the date of February 4, 2013, she was unable to attach any significance to that date or to identify any information that she acquired on that date regarding Meagan's death. She did testify that an employee of Ochsner told her that something was done wrong regarding Meagan's treatment; however, she could not identify the employee or when the alleged statement was made, nor could she relate the substance of what the employee said to her. Although she did indicate that she might have been thinking about a conversation she had with Dr. DeGrange,[3] which was discussed earlier in her deposition, that portion of her deposition was not introduced at the trial of the exception, and therefore neither the substance nor the date of that conversation is known to this Court.
*1231 In response to defendants' exception of prescription, Sherie Boudoin did not introduce any evidence to attempt to prove the allegation in her petition that she first learned of potential malpractice on February 4, 2013, or to establish any other date upon which she learned information that was enough to excite attention and call for inquiry into the circumstances of Meagan's death.
In sustaining defendants' re-urged exception of prescription, the trial court found that the "evidence establishes that a few months after Meagan Boudoin's death, Sherie Boudoin discovered facts that would enable plaintiff to reasonably conclude that her daughter was the victim of medical negligence. Consequently the one-year prescriptive period began to run at the time of discovery in approximately April 2011."
We find that the mere suspicion of Meagan's father that "something was done wrong here, we need to figure out what happened," is not sufficient constructive knowledge of any actual facts regarding Meagan's treatment that would commence the running of prescription. We also find it questionable as to whether the statement of Dr. Garcia, who was not involved in the treatment of Meagan and who presumably did not review any of Meagan's medical records, would be sufficient constructive knowledge, in and of itself, to commence the running of prescription. However, in response to Dr. Garcia's statement, Sherie Boudoin indicated that "of course a flag kind of went off," which is an acknowledgement that she believed that she was being given sufficient information to excite attention, put her on guard and call for inquiry. Furthermore, Sherie Boudoin introduced absolutely no evidence to support her self-serving allegation that she first learned of potential malpractice on February 4, 2013, or to establish any other date, within one year prior to the filing of her petition, upon which she first learned of potential malpractice. Under these circumstances, we are unable to say the trial court was manifestly erroneous in finding that Sherie Boudoin discovered facts within a few months of Meagan's death from which she could reasonably conclude that Meagan was the victim of medical negligence. Consequently, prescription on these medical malpractice claims had tolled at the latest one year later, in April of 2012. Plaintiffs' claims, filed on January 2, 2014, are clearly prescribed.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court which sustained defendants' exception of prescription and dismissed plaintiffs' claims with prejudice.
AFFIRMED

Internally within plaintiffs' petition, Meagan Boudoin's first name is alternatively spelled "Meagan" and "Maegan." In this opinion, we use the spelling "Meagan," which is the spelling used in the caption of the petition.

Meagan Boudoin died on January 6, 2011, three years prior to the filing of the petition. Because the petition purports to bring an individual claim by Meagan, rather than a proper survival action by her surviving heirs, and this error was not challenged by defendants, both the judgment below and the appeal record classify Meagan Boudoin as an individual plaintiff in this litigation. Since this error does not affect the analysis or resolution of defendants' exception of prescription, this opinion will likewise simply refer to Meagan Boudoin as an individual plaintiff.

We assume that Dr. DeGrange referred to in the excerpt of Sherie Boudoin's deposition is Dr. Christie DeGrange, who was Meagan Boudoin's primary care physician and is a named defendant in this lawsuit.