IN RE: MEDICAL REVIEW PANEL FOR THE

CLAIM OF KAYLA MARLES NEVILLE

NO. 20-C-127

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

June 30, 2020

Susan Buchholz
First Deputy Clerk

**IN RE** FELIX H. SAVOIE, M.D.

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE ELLEN SHIRER KOVACH, DIVISION "K", NUMBER 791-435

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

**WRIT GRANTED; JUDGMENT OVERRULING PEREMPTORY EXCEPTION OF PRESCRIPTION REVERSED; PEREMPTORY EXCEPTION OF PRESCRIPTION SUSTAINED; MEDICAL MALPRACTICE CLAIM AGAINST DR. SAVOIE DISMISSED.**

In this writ application, relator/defendant, Felix Savoie, M.D., seeks review of the trial court's March 4, 2020 judgment overruling his peremptory exception of prescription.[1] After review, and finding the district court erred in overruling Dr. Savoie's exception, we grant the writ, reverse the trial court's judgment, sustain Dr. Savoie's peremptory exception of prescription, and dismiss plaintiff's medical malpractice claim against Dr. Savoie.

**Factual Background and Procedural History**

Plaintiff, Kayla Marles Neville, is a twenty-one-year-old woman who injured her right arm on June 22, 2016, while in the course and scope of her employment as an intern at Disney World in Orlando Florida. Upon her return to New Orleans in late 2016, she began treating with defendant, Dr. Savoie, and he eventually performed surgery to repair the triceps tendons in her right arm on February 17, 2017. In the course of that surgery, Dr. Savoie inserted dissolvable screws to hold the tendon in the correct position. Unfortunately, Ms.

---

[1] This Court initially denied Dr. Savoie's writ application because he failed to append certain documents to his original writ filing in accordance with the Uniform Rules–Courts of Appeal. Dr. Savoie then requested rehearing asserting that difficulties with the COVID19 time extensions and subsequent shutdown of the 24th Judicial District Court made it impossible for him to append the required documents, and we agreed to rehear Dr. Savoie's original matter in the interest of justice. Dr. Savoie then timely filed a supplement to the original writ supplying the requisite documents, which brings us to the merits.

Neville continued to experience pain and discomfort after the surgery, and as such, sought a second opinion from Dr. Claude Williams in July/August of 2017, some six months post-surgery.

On November 15th of 2017, Dr. Williams read an MRI that had been performed on Ms. Neville's arm, and discovered that one of the screws that had been inserted at the time of the original surgery in February of that year had not dissolved, and had, in fact, migrated into the joint. Dr. Williams diagnosed this non-dissolved/migrated screw as the cause of Ms. Neville's continued pain, and informed her that she should return to defendant Dr. Savoie for a surgical follow up. The next day, November 16, 2017, Ms. Neville saw Dr. Savoie, allowed him to review the MRI that had been ordered by Dr. Williams, and he confirmed that the screw inserted during the surgery he performed, in fact, had not dissolved and had migrated into the joint, which was likely the source of her continued pain and prolonged recovery. He also indicated at that appointment that Ms. Neville would have to undergo a second operative procedure to remove the migrated screw. Ms. Neville did not want Dr. Savoie to perform the follow-up surgery. She returned to Dr. Williams on November 20, 2017, to schedule the second surgery, which was performed by Dr. Williams on December 17, 2017. According to Ms. Neville's original medical review panel ("MRP") complaint, in July of 2018, she was told she would have a permanent 4% reduction in the use of her right arm. Ms. Neville initiated her request for a MRP on December 12, 2018. In her complaint, Ms. Neville alleges that while the malpractice occurred on February 17, 2017, she did not become aware of the alleged malpractice until December 17, 2017, when the corrective surgery was performed.

In response to Ms. Neville's request for a MRP, Dr. Savoie filed an exception of prescription. According to Dr. Savoie, Ms. Neville knew or should have known that she had a claim for alleged malpractice against defendant no later than November 20, 2017, when her second surgery was scheduled to remove the screw he implanted during the first. Thus, Dr. Savoie averred that Ms. Neville's request filed more than one year later on December 12, 2018, was untimely, and the matter was prescribed. Ms. Neville opposed the motion stating that because she did not have "definitive knowledge" of her claim for malpractice until December 17, 2017, when the undissolved screw was actually removed from her right arm during the second surgery, her request for a MRP was timely since it was filed within one year from that date.

Dr. Savoie's exception came for hearing on February 7, 2020. The district court denied the exception and issued a judgment to that effect on March 4, 2020.[2] This writ application followed.

**Law and Analysis**

Prescription on a claim of medical malpractice is governed by La. R.S. 9:5628(A), which provides, in pertinent part, that a medical

---

[2] The judgment rendered by the trial court on March 4, 2020 also dismissed the exception of prescription as to co-defendant Omega Hospital, however they did not join with defendant Savoie in the filing of the original writ in April.

malpractice claim must be brought "… within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, evens as to claims filed within one year from the date of discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." Under this statute, prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 510. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring suit as long as there is constructive knowledge of same. *Id.* Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. *Id.* at 510-00. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. *Id.* at 511. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. *Id.*

Ordinarily, the party urging prescription bears the burden of proof at the trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show that the action has not prescribed. *In re Medical Proceedings v. Ochsner Clinic Foundation*, 17-488 (La. App. 5 Cir. 3/14/18), 241 So.3d 1226, 1230, *writ denied*, 18-594 (La. 6/1/18), 244 So.3d 435. On the trial of a peremptory exception pleaded at or prior to the trial of the case, "evidence may be introduced to support or controvert any of the objections pleaded, when the ground thereof do not appear from the petition." La. C.C.P. art. 931. When evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. *In re Medical Proceedings*, 241 So.3d at 1230. However, when the district court is not called upon to exercise its fact-finding function and the matter involves the determination of purely legal issues, reviewing courts apply a *de novo* standard of review. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La. 1983).

Here, a review of the specific allegations set forth in Ms. Neville's request for MRP show on its face that the request was timely filed and was not prescribed. Specifically, Ms. Neville alleged that the act of malpractice occurred on the date of the original surgery, February 17, 2017, but that she did not discover the alleged negligent act until December 17, 2017, when the corrective surgery was performed to remove the non-dissolved/migrated screw. Although Ms. Neville's request for MRP was filed more than one year from the date of the alleged malpractice, her request for MRP made a *prima facie* showing that it was filed "within one year from the date of [her] discovery" and "within a period of three years from the date of the alleged act, omission or neglect." La. R.S. 9:5628(A); *Campo*, 828 So.2d at 509. Accordingly, since Ms. Neville's request for MRP was not prescribed on its face, Dr. Savoie bore the burden of proving that Ms. Neville's claim was prescribed.

To carry that burden, Dr. Savoie introduced into evidence at the trial of the exception, plaintiff's medical records. A review of these records reveals the following operative dates, which are critical to a determination of whether or not Dr. Savoie carried his burden of proving that Ms. Neville's malpractice claim is prescribed:

**February 17, 2017**: date of original surgery
July/August 2017: earliest date of second opinion by Dr. Williams
November 15, 2017: date of reading of MRI by Dr. Williams
November 16, 2017: confirmation of MRI results by defendant, Dr. Savoie
November 20, 2017: return to Dr. Williams to schedule follow-up surgery
December 17, 2017: follow-up surgery to remove migrated screw by Dr. Williams
**December 12, 2018**: request initiated by Ms. Neville for MRP filed

The law in Louisiana is clear that a plaintiff has one year from the date of the original act, or one year from the time that the plaintiff should have reasonably been on notice that a problem had occurred that might implicate malpractice, to file a claim. As set forth above, Ms. Neville sought a second opinion as early as July of 2017, and by November 20, 2017, had scheduled a second surgery with a different doctor, with full knowledge of the alleged failure of the first. Specifically, Dr. Williams diagnosed the alleged malpractice as the cause of Ms. Neville's pain on November 15, 2017, when he reviewed the MRI and saw that the screw implanted by Dr. Savoie during the first surgery had not dissolved, but had migrated into the joint. On November 16, 2017, Dr. Savoie acknowledged to Ms. Neville that the first surgery failed.

We find that based on the evidence presented by Dr. Savoie, he successfully carried his burden of proving that Ms. Neville had, at the very least, constructive knowledge of the alleged malpractice as early as November 16, 2017, when Dr. Savoie confirmed Dr. Williams' diagnosis and concurred with his recommendation for corrective surgery. We are not persuaded that Ms. Neville's knowledge required that she actually undergo the second surgery in order that she "know" that the first surgery was a suspected failure. To the contrary, as of November 16, 2017, we find that Ms. Neville had knowledge or information sufficient "to excite attention and put [her] on guard and call for inquiry. … Such information or knowledge as ought to reasonably put [her] on inquiry is sufficient to start running of prescription." *See Campo*, 828 So.2d at 510-511. Accordingly, Ms. Neville had one year from November 16, 2017, to file her request for a MRP. Ms. Neville did not file her request until December 12, 2018. As such, we find that Dr. Savoie met his burden of proving Ms. Neville's request was untimely filed. The trial judge erred in ruling otherwise.

"When the overruling of the exception is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of the application for

4

supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits." *Herlitz Constr. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So.2d 878, 878 (La. 1981); *Bank v. New York Mellon v. Oldemeyer*, 19-348 (La. App. 3 Cir. 10/9/19), 282 So.3d 1098, 1108; *Jones v. State*, 04-717 (La. App. 4 Cir. 9/29/04), 891 So.2d 698, 703, *writ denied*, 04-2706 (La. 1/7/05), 891 So.2d 681. *See also*, *In re Medical Review Panel Proceedings of Jonathan Junior*, 19-134 (La. App. 5 Cir. 5/1/19), --- So.3d ---, 2019 WL 1941260; *Johnson v. Foremost Insurance Company*, 18-406 (La. App. 5 Cir. 8/15/18), --- So.3d ---, 2018 WL 3910685. Accordingly, for the foregoing reasons, we grant Dr. Savoie's writ application, reverse the district court's judgment overruling his peremptory exception of prescription, sustain Dr. Savoie's peremptory exception of prescription, and dismiss Ms. Neville's medical malpractice claim against Dr. Savoie.

Gretna, Louisiana, this 30th day of June, 2020.

**SMC**
**MEJ**
**JJM**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## <u>NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY <u>06/30/2020</u> TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**20-C-127**

**CURTIS B. PURSELL**
CLERK OF COURT

**E-NOTIFIED**

Michael G. Bagneris (Respondent)

Michael F. Nolan (Relator)
Don S. McKinney (Respondent)

**MAILED**